**GENERAL PLYWOOD CORPORATION, a Corporation, Respondent,**

v.

**S. R. BRUNN CONSTRUCTION CO., and Federal Insurance Co., Appellants,**

v.

**FARMERS & TRADERS BANK OF CALIFORNIA, Missouri, Respondent.**

No. 26535.

Missouri Court of Appeals, Kansas City District.

July 1, 1974.

Harold T. Van Dyke, Linde, Thomson, Van Dyke, Fairchild & Langworthy, Kansas City, for appellants.

Gene A. DeLeve, Berman, DeLeve, Kuchan & Chapman, Kansas City, for respondent.

Before DIXON, C. J., and SHANGLER and WASSERSTROM, JJ.

WASSERSTROM, Judge.

This is a suit by a materialman to impose a mechanic's lien on a construction project for which it furnished specially made doors and to recover the value of those doors from the subcontractor Hyder Inc., the principal contractor S. R. Brunn

Construction Co., and Brunn's surety, Federal Insurance Co. Brunn in turn filed a third party petition against Farmers & Traders Bank of California, Missouri, seeking to recover from the Bank any sum for which Brunn might be adjudged liable to plaintiff.

After a trial without a jury, the trial court made findings of fact and conclusions of law and entered judgment for $5,625.29 against Hyder and decreed a mechanic's lien against the property for that amount; a judgment in the sum of $5,625.-29 against Brunn; and judgment against Federal in the amount of $8,108.66. The greater amount of judgment against Federal as compared to that against Hyder and Brunn comes about because of the assessment of statutory penalties for vexatious delay against Federal. The judgment by the circuit court also provided for dismissal of the third party petition by Brunn against the Bank.

The essential issues for determination on this appeal are as follows: 1) Brunn issued a check for $5,474.50 to Hyder which Hyder delivered to the Bank and the proceeds of which were then delivered by the Bank to plaintiff. Although Brunn intended this check to be in payment for the doors now in suit, the proceeds of the check were actually used by plaintiff toward payment for other doors delivered to Hyder for other jobs under different contractors. These facts present the principal question in this case: Is Brunn entitled to have its check treated as payment toward the obligation now in suit? 2) If Brunn is not so entitled, then is the Bank liable to Brunn for breach of an obligation alleged by Brunn to exist by which the Bank was obligated to use the Brunn check solely in payment of the doors ordered for Brunn's job? 3) Is Federal liable for statutory vexatious delay penalties?

■ Preliminary to the discussion of those issues on the merits, certain procedural questions need disposition. The first of these is plaintiff's motion to dismiss the appeal for the failure of the Brunn and Federal appellants' brief to comply with the applicable court rules. This motion is a renewal of plaintiff's objection previously made to the original appellants' brief. That original brief was withdrawn, rewritten and the present amended appellants' brief has been substituted. The amended brief still leaves something to be desired, but it is not so inadequate as to warrant the drastic remedy of dismissal of the appeal.

Other procedural points raised by the plaintiff relate to the sufficiency of the pleadings in the trial court to raise the principal issue now argued on this appeal, and the alleged lack of standing of Brunn and Federal to attack that portion of the judgment establishing a mechanic's lien. It becomes unnecessary to discuss those procedural points in view of our conclusion that irrespective of the validity of those procedural objections, plaintiff is entitled to recover on the merits of the issues to which these procedural matters relate.

I.

The facts underlying this controversy are rather complicated. Brunn had a general contract for the construction of the Beth Shalom Religious Center in Kansas City, Missouri. In connection with that job, Brunn contracted with Hyder for the latter to supply certain millwork and doors. Hyder ordered the doors to be used from plaintiff, but since Hyder was in very bad financial condition, plaintiff was unwilling to ship any merchandise to Hyder except on a cash basis. Accordingly, plaintiff shipped these doors intended for the Beth Shalom job, together with other doors, to California, Missouri, on October 16, 1969, pursuant to a bill of lading delivered to the Bank with draft on Hyder attached. The bill of lading covered car No. SP223263, and this car contained doors for the Beth Shalom job, for the Kansas City Technical job on which J. E. Dunn Construction Co. was the general contractor, and for other jobs.

Hyder did not have the financial resources with which to pay this draft, and he therefore resorted to requests upon the various general contractors to make advance payment for their respective doors so that Hyder might be able to secure a release of the car. In response to Hyder's request, Brunn did draw and mail to Hyder on October 23, 1969, its check in the sum of $5,474.50 payable to Hyder and the Bank jointly. As prepared by Brunn, this check had attached, but in detachable form, a remittance advice which stated "For doors only at Beth Shalom Religious Center job."

Although Brunn did furnish the money for its share of the doors on car SP223263, Dunn, who had a much more valuable shipment of doors in the same car, refused to do likewise. When this refusal became apparent, plaintiff requested a return of its bill of lading and draft, and those documents were returned to plaintiff by the Bank. Nevertheless, the car remained physically at California, Missouri, and negotiations continued between Dunn and plaintiff for an arrangement under which delivery could be made. Finally an agreement was reached under which payment would be made direct by Dunn to plaintiff for the Dunn doors, and the entire carload (including the Brunn doors) was released to Hyder on November 24, 1969. In agreeing to this release, plaintiff relied in part upon its mechanic's lien rights against the Beth Shalom job into which the Brunn doors were to be utilized.

On November 20, 1969, shortly before the release of car No. SP223263 was effected, plaintiff sent a second car of doors, No. CBQ 49696, to California, Missouri, for delivery to Hyder, but subject to a new and different bill of lading and attached draft. None of the doors on this second car were destined for any Brunn job. However, during all of the long period since delivery to it of the Brunn check, Hyder had continued to hold the check. After arrival of the second car, No. CBQ 49696, Hyder finally took the Brunn check

to the Bank on November 26, 1969, and deposited it, with others, so as to create a balance in its account sufficient to cover plaintiff's new draft. This draft, by then being the only draft outstanding from plaintiff to Hyder, was in the amount of $6,502.96. After making its deposit, Hyder wrote a check for $6,509.46 (the difference between this check and the amount of the draft representing the Bank's collection charge) to the Bank with the notation thereon "Sight Draft—General Plywood Corporation." In exchange for that check the Bank issued and delivered its check for $6,502.96, the amount of the second draft, to plaintiff. Upon receipt of this check from the Bank, plaintiff applied the proceeds to the various invoices covering merchandise which had been shipped in car No. CBQ 49696.

Brunn argues that under these facts the proceeds of its check should have been applied in payment for its doors, not in payment for someone else's doors. It argues that it so intended and made that intention plain, that the Bank was advised of that intention, and that plaintiff must be held to the Bank's knowledge on principles of agency. It and Federal contend that as a matter of law this application which they say should have been made originally by plaintiff, must now be made judicially.

■ The law generally is that when a debtor owes various items on account and makes a partial payment against the total, the debtor has the first right to dictate which item or items shall be the ones toward which the payments shall be applied. Herrman v. Daffin, 302 S.W.2d 313 (Mo. App.1957); Title Insurance Corporation of St. Louis v. United States, 432 S.W.2d 787 (Mo.App.1968). This rule comes into play here in view of the fact that Hyder unquestionably intended and directed that its deposit on November 26, which included the Brunn check, be used for the purpose of releasing car No. CBQ 49696.

■ However, this rule is subject to an exception recognized in many states, in-

cluding Missouri, that the debtor's direction for application will not be given effect if that direction conflicts with an obligation by the debtor to a third party to use the payment in some other fashion and if the creditor knows or has reason to know of that obligation. Restatement, Contracts, § 388; 70 C.J.S. Payment § 79, page 282. The same general concept is reflected in the somewhat different statement that where the creditor knows of the particular source of payment and if the rights of third parties are involved, he must apply the payment in exoneration of that source. 70 C.J.S. Payment § 64, page 268; Herrman v. Daffin, supra. However phrased, the underlying rationale remains the same —that is, to accomplish the ends of fairness and equity.

Whether or not this exception to the general rule should be given effect in the present case depends upon whether it can fairly be said that plaintiff knew or should have known of Hyder's duty to apply Brunn's check solely for the payment of the Beth Shalom doors. That this is the controlling issue is voiced by Brunn itself by the following statement in its brief: "It is the theory of the defendant appellant, S. R. Brunn Construction Company, that notice was given its subcontractor, Hyder, and Farmers & Traders Bank where to apply the funds from its check. They were both payees on the check, and the remittance advice attached to the check at the time it was drawn and sent to Hyder and Farmers & Traders Bank was notice to them of how to apply the funds." We direct ourselves therefore to this key question of whether plaintiff had notice of Brunn's instructions with respect to this check.

Plaintiff first attacks the claim that it had notice, by pointing out that Brunn's only claim made with respect to notice is that the notice was given to the Bank; and plaintiff denies that any receipt of knowledge in this regard by the Bank was within the scope of any agency being exercised by the Bank for plaintiff. This agency issue need not be explored, for the reason that we conclude that no adequate notice was ever brought home even to the Bank.

■ Brunn's main reliance with respect to notice consists of the remittance advice which was attached to the check at the time it was mailed to Hyder. However, there is no compelling evidence that the remittance advice remained attached on November 26 when Hyder deposited the check at the Bank. True enough, Hyder's president, Winchester, indicated in his testimony that the remittance advice did remain attached. Contrary to that testimony is the evidence that if the remittance advice had been so attached, then the check could not have been handled as an ordinary deposit to the Hyder account and would have had to be handled as a collection item. Whether or not credence should have been given to Winchester's testimony was a matter for the trial court as finder of the facts, and the court's declination to believe Winchester's testimony is now conclusive. This same reason constitutes a complete answer to Brunn's contention that notice to the Bank was shown by Winchester's testimony concerning his alleged conversation with the president of the Bank, during the course of which Winchester claims to have made a full disclosure of the situation to the Bank president.

■ The fact that the Bank was a co-payee on the check is completely without significance for present purposes. This would have been a perfectly normal procedure for anyone wanting the application of the check toward the release of merchandise being shipped to Hyder pursuant to bill of lading with draft attached, and the Bank did apply this check for just exactly such a purpose. The only difficulty as far as Brunn is concerned is that the check was applied for the release of a different carload of merchandise than Brunn had intended. However, the naming of the Bank as a co-payee could have no effect in notifying the Bank that the check was to be applied to one car rather than another, and

it did apply the check toward payment of the only draft against Hyder then outstanding. The lack of legal significance of the check being to joint payees is demonstrated by Koehring Company v. United States ex rel. Hoover Equipment Company, 303 F.2d 468, 470 (10th Cir. 1962), which holds on analogous facts:

> "Even though Hoover was a payee on Proctor's check, the trial court found that it had no knowledge or notice of Central's duty to Proctor to discharge a particular debt with the $3000.00 payment. Hoover knew that Proctor had furnished the money for the payment, but under these circumstances the check did not serve to place Hoover on notice of Central's duty to Proctor. Since knowledge or notice of the debtor's duty is essential to the application of the special rule, Hoover was free to apply the payment in accordance with the agreement between it and Central."

It was within the power of Brunn to have protected itself. It could have sent the check with the remittance advice attached directly to the Bank, and then there would have been no question about full notice on the part of the Bank. Instead, Brunn saw fit to deliver the check to Hyder and moreover stood idly by for more than a whole month without the doors being delivered or the check being returned. Therefore, it has itself to blame for placing its total reliance upon the faithfulness of Hyder.

■ In considering the overall equity in this matter, one further factor should be mentioned. When plaintiff sent out the second carload of doors, car No. CBQ 49696, it knew that Hyder was a poor credit risk and it had already established a practice of furnishing nothing to him except on a cash basis. In pursuance of that determination, this second car was sent on bill of lading with draft attached and the doors contained in this carload would not have been released except upon cash payment in advance. If it were now decided

that this cash payment should be reallocated to some other debt, then plaintiff would be deprived of the commercial safeguard on the contents of car No. CBQ 49696, for which it had carefully arranged and upon which it justifiably depended. Therefore, granting the protection to Brunn which it asks would require depriving plaintiff of protection for which it bargained. One of these innocent parties must suffer, and legal tradition dictates that the loss must be borne by Brunn, whose negligent reliance upon Hyder made the misappropriation possible.

## II.

Brunn argues that if it is liable to plaintiff, then the Bank should be liable to it for conversion of funds or for money had and received "for its failure to follow Brunn's direction in his remittance advice to apply the money to pay for the doors at the Beth Shalom Religious Center."

■ The trial court found the facts to be: "Farmers & Traders Bank did not * * * violate any agreement or instruction with respect to the disbursement of the proceeds of said check." By that finding, as well as necessarily from the result reached, the trial court has established that the Bank had no notice of Brunn's direction for the use of its funds. These findings are supported by the evidence already fully discussed in Section I of this opinion, are far from clearly erroneous, and therefore cannot be disturbed.

## III.

The judgment imposed statutory penalties against Federal for vexatious refusal to pay, and Federal appeals from that assessment. It argues basically that the record fails to show that its refusal to pay plaintiff's demand was without reasonable or probable cause as the facts reasonably appeared before trial. We sustain this contention.

The trial court's conclusion that Federal's refusal to pay was vexatious and without reasonable cause rests upon its finding of fact: "At no time prior to the denial of said claim did Federal make any investigation of the merits of General Plywood's claim for payment. Federal took no action on said claim except to refer the claim to Brunn as principal on the bond for defense and exoneration."

Evidence bearing upon this matter is scanty. A stipulation of the parties shows that plaintiff made claim direct to Federal and that in response thereto Federal replied by letter as follows:

"This will acknowledge your letter of July 29, 1970 on the above captioned matter.

"We are immediately bringing the situation to the attention of our Principal, S. R. Brunn Construction Company, and we are confident it will honor any obligation which it may have to your client under the bond.

"Thank you for bringing the matter to our attention."

The only other evidence offered on this issue was the testimony of Federal's employees in the Kansas City office, subpoenaed by plaintiff, who testified that all investigations of surety claims were made out of the New York office and that no local employees or agents had any knowledge as to any investigation which may have been made, nor did the Kansas City office have any claim files.

This skimpy evidence does not suffice to support the conclusion that Federal did not make any independent investigation. The testimony of Federal's Kansas City employees is meaningless, since they had no knowledge of the subject. It would be fair to say that the letter quoted reflects that no independent investigation had been made up to the receipt of the notice from plaintiff. However the letter does not constitute in itself any definitive action on plaintiff's claim, and the record is completely silent as to what transpired thereafter by way of investigation and communication between the parties. As a matter of fact, the record does not even show when and in what manner and by whom the ultimate denial of liability was finally made.

Rather than constituting a denial of liability, the quoted letter conveys the meaning that Federal was constituting Brunn as its agent to act in its behalf in investigating and dealing with plaintiff's claim. In view of this letter, if Brunn had denied the claim while knowing that it was justly due, then Federal, beyond doubt, would be bound by its agent's knowledge and action and would be liable for vexatious penalties on that basis. By like token, if Brunn denied liability upon reasonable grounds, then Federal should have the advantage of the investigation and knowledge upon the basis of which Brunn made the denial. Whether inculpatory or exculpatory, the knowledge of the agent Brunn should be attributed to the principal Federal.

Looking then to the facts which Brunn knew or should have known, it appears quite clear that Brunn had sufficient basis upon which to reasonably deny liability. Brunn knew that it had drawn a check for almost $5,500 to be applied for payment of the doors in question; it knew that it had written an express instruction on the remittance advice attached to the check stating that this money was to be used only for the Beth Shalom doors; and it must have had (at least plaintiff did not show to the contrary) a statement from Winchester along the line of what he ultimately testified in court to the effect that he had delivered the remittance advice to the Bank and had fully explained to the Bank that the Brunn check was to be applied solely in payment of the Beth Shalom doors. In the light of this pretrial information, Brunn had every reason to believe that it had paid the entire amount claimed by plaintiff. Indeed, had Winchester's testimony been believed, the trial court would have had no choice (except possibly based on the question mentioned above concern-

ing the Bank's agency for plaintiff on which Brunn had at the minimum an honestly debatable position) but to rule in Brunn's favor. By no stretch of imagination can it be said that a denial of liability by Brunn was vexatious and without reasonable cause. And as indicated above, since Brunn's denial was upon reasonable cause, Federal must be given the same benefit and a like conclusion must be drawn as to it.

■ This result is particularly appropriate when the special nature of the surety contract here involved is considered. Federal under its contract of suretyship had a direct obligation to materialmen, but it also had a right of indemnification from Brunn for any sums which Federal might be required to pay to such claimants. Were Federal to have undertaken its own investigation of plaintiff's claim wholly independent of Brunn, it might reach a conclusion different from that reached by Brunn on its separate investigation. This would put Federal in the awkward position of possibly settling with plaintiff, only to buy a lawsuit against its own principal, Brunn. This unappealing possibility would be on top of the duplication of costs if Federal and Brunn were each to make its own separate investigation. So, all logic called for Federal to cooperate with Brunn, and in this case to defer to Brunn's investigation since Brunn was located on the ground in Missouri, whereas Federal's claim department was in New York. Such deference in itself cannot be stigmatized as unreasonable. In the absence of any further evidence of some other conduct claimed to show a vexatious course of conduct, the letter from Federal to plaintiff does not suffice as a basis for the statutory penalties.

The denial of statutory penalties under the facts here finds direct support in United States ex rel. R. W. Vaught Co. v. F. D. Rich Co., Inc., 439 F.2d 895 (8th Cir. 1971), where vexatious delay penalties were claimed against sureties on the ground that they failed to investigate plaintiff's claim " 'because they had a solvent principal'." The assessment of those penalties at the trial level was reversed on appeal, the appellate court holding:

"In order for a plaintiff to recover for vexatious refusal to pay, he must produce evidence which shows that the refusal was wilful and persistent and without reasonable cause as the fact would appear to a reasonable and prudent person before trial. Duckworth, supra, 452 S.W.2d 280, 287; Hughes v. Great American Ins. Co., 427 S.W.2d 266, 271 (Mo.App.1968). No evidence of that nature has been produced in the instant case. The mere finding by the trial court here that the sureties failed to investigate the claims and relied upon a solvent principal will not, by itself, justify the assessment of vexatious damages where the record demonstrates that the principal presented a reasonable, albeit unsuccessful, defense. Where there is an open question of fact or law determinative of the insured's liability, the insurer, acting in good faith, may insist on judicial determination of such questions without subjecting itself to penalties for vexatious refusal to pay."

The decision being handed down concurrently herewith by Division 2 of this court in Housing Authority of the City of Clinton v. Baumann, No. KCD 26285, in no way conflicts with this opinion. In the Baumann case a principal contractor stopped work because of a dispute with the owner and then refused to make payment of the balance due to a subcontractor. The subcontractor had completed performance and was concededly entitled to payment. When the surety for the principal contract followed the lead of its principal in refusing to pay the subcontractor, neither of them had any reasonable basis for so doing, and the surety was properly held liable for the statutory penalties. This case is plainly distinguished by the existence in the present case of reasonable grounds for Brunn to believe that it was not liable to the claimant.

The judgment is affirmed except with respect to the imposition of statutory penalties for vexatious delay. In the latter respect the judgment is reversed. Costs will be assessed one-half against appellants and one-half against respondent General Plywood Corporation.

All concur.