MALOTT ELECTRIC COMPANY,
INC., Appellant,

v.

BRYAN ENTERPRISES, INC.,

and

Prudential Insurance Company of
America, Respondents.

No. KCD 28253 and 28317.

Missouri Court of Appeals,
Kansas City District.

Feb. 28, 1977.

Motion for Rehearing and/or Transfer
Denied April 19, 1977.

Application to Transfer Denied
May 10, 1977.

H. Fred Northcraft, James E. Kelley, Jr., Kansas City, for appellant.

H. Michael Coburn, Lloyd C. Loomis, Kansas City, for respondents.

Before SHANGLER, P. J., and WELBORN and HIGGINS, Special Judges.

WELBORN, Special Judge.

Action by electrical contractor to recover for work and materials furnished pursuant to contract in construction of shopping center and to have judgment enforced as a mechanic's lien against the premises. On motion of owner of premises for partial summary judgment, trial court denied claim for lien. Plaintiff appeals from such judgment.

Bryan Enterprises, Inc. ("Bryan") as owner contracted with Bennett Construction Co., Inc. ("Bennett") as general contractor to construct the Brywood Centre Shopping Center at 63rd and Glen Ridge Cut-Off in Kansas City. On December 2, 1971, Bennett contracted with Malott Electric Company, Inc. ("Malott") as subcontractor to perform electrical work on the project at a "guaranteed maximum" contract price of $291,733.00.

In June, 1972, Bennett withdrew as general contractor for the project. Bryan notified Malott that it would assume the obligations of Bennett under the subcontract and the work proceeded.

In December, 1972, the Brywood Centre was sold to the Prudential Insurance Company of America ("Prudential").

On January 19, 1973, Malott filed a mechanic's lien statement with the clerk of the Jackson County Circuit Court. The statement of account accompanying the claim was as follows:

```
"Original Contract Price    $291,733.00
 Agreement for extras        270,769.12
 Interest                      2,725.77
                                          $565,227.89
Total payments received                    346,113.12
                                          $219,094.77
Amount due contractor                     $219,094.77  "
```

Subsequently, Malott filed its petition against Bryan to recover for the value of materials and labor supplied but not paid for in the amount of $219,094.77, and to foreclose the mechanic's lien.

Prudential filed its motion for partial summary judgment, seeking dismissal of the mechanic's lien portion of plaintiff's petition on several grounds, among which was that plaintiff had failed to file with the circuit clerk any "true account" of the money allegedly due plaintiff as required by § 429.080, RSMo 1969.

The trial court sustained Prudential's motion on that ground. The judgment so entered was designated as final for the purposes of appeal (Rule 81.06) and this appeal followed.

In this court, appellant contends that "under all the circumstances," its mechanic's lien statement did substantially comply with the "just and true account" requirement of § 429.080 because its statement fell within the "lump sum" rule.

" * * * [W]here a lien claimant is an original contractor and has made a lump sum contract with the landowner, his lien account may be stated in a lump sum and need not be itemized in order to be considered sufficient. The reason ordinarily given is that the landowner is bound by his contract and should be familiar with the items required for a compliance therewith. *Mississippi Woodworking Company v. Maher*, Mo.App., 273 S.W.2d 753; *State ex rel. St. Francois County Building and Loan Ass'n v. Reynolds*, 288 Mo. 522, 232 S.W. 1035." *Wadsworth Homes, Inc. v. Woodridge Corporation*, 358 S.W.2d 288, 291[3] (Mo.App.1962).

Although appellant was originally a subcontractor, the trial court concluded, in effect, that after "Bennett bowed out," appellant became a prime contractor. Prudential has not here attempted to support the trial court's judgment on the grounds that appellant's status was that of a subcontractor. Prudential does contend that the "lump sum" rule is not properly applicable here because appellant's lien statement shows that the amount it claims is owed it is for "extras," in excess of the originally agreed to contract price. It points out that the agreed contract price was $291,733 and that the statement shows the receipt of $346,-113.12, and a claimed balance due of $219,-094.77. Prudential contends that when a contractor is seeking to enforce a mechanic's lien based upon "extras" in addition to the agreed lump sum contract price, the contractor is required to itemize such extras and may not simply treat them in the same manner as the original contract price. See *Schroeter Bros. Hdw. Co. v. Croatian "Sokol" Gymnastic Ass'n et al.,* 332 Mo. 440, 58 S.W.2d 995, 999–1000[1–3] (1932).

Appellant would avoid the holding in that case in the circumstances of this case as disclosed by an uncontroverted affidavit of its president, filed in opposition to Prudential's motion for partial summary judgment.

According to this affidavit, when appellant began work under the contract with Bennett, final plans for the electrical work, approved by the tenants, were not available, but at Bennett's request, and subsequently Bryan's, after it took over the contract, appellant proceeded with the work. Numerous changes in the plans were made after appellant started its work, with the result that much of its work had to be torn out and redone, sometimes more than once, to conform to the final plans. A few written change orders, called for by the contract, were made, but, after Bryan took over the contract, written change orders were not submitted because Bryan's president had instructed plaintiff not to do so, but to perform whatever extra work was necessary and represented that Bryan would pay for such work at the conclusion of the project. Further the affidavit as-

serted that on November 3, 1972, appellant's president advised Bryan and Prudential that some $221,000 was owed appellant and in a subsequent meeting he stated appellant's claim to Bryan and Prudential representatives "with as much particularity as [he] was able at the time." Bryan declined to pay appellant any more, although its president did agree to meet privately with appellant's president and discuss the claim, but the meeting was never held.

Appellant's position is that if the contract had been followed and written change orders with advance pricing had been submitted for the numerous changes in the project, it would have been entitled under the "lump sum" rule to have made its lien claim in the form here employed because "the owner should be as familiar with extra work done pursuant to written change orders, the price of each such change and the sum of those prices as he is with the work within the scope of the contract and its price." Appellant argues that Bryan and its successor, Prudential, should not be allowed to obtain advantage from the lack of formal change orders and advance pricing because such lack was instigated by Bryan for its benefit.

■ Whether the premise of this argument that extras for which the price was agreed could be lumped as under a fixed price contract is consistent with the holding in the *Schroeter Bros. Hdw.* case, supra, need not be pursued. The logical basis for the "lump sum" rule would appear to have equal application to the assumed situation. However, to permit, in this case, a statement such as appellant here employed for the extras would require that a basic object of the lien notice be ignored.

" \* \* \* [T]he legislative purpose of requiring the filing of the 'just and true account' is so that the landowners and others interested may learn from the lien statement what the lien claimant asserts he has furnished, thus permitting an investigation to be made to determine whether the materials actually went into the building; whether they were lienable items, and whether the amount charged is proper.

*Grace v. Nesbitt et al.,* 109 Mo. 9, 18 S.W. 1118; *State ex rel. O'Malley v. Reynolds,* 266 Mo. 595, 182 S.W. 743." *Wadsworth Homes, Inc. v. Woodridge Corporation,* supra, 358 S.W.2d at 291[2].

■■ The last mentioned factor is undoubtedly one of the considerations which support the requirement that the lien statement, when the claim is based upon quantum meruit, itemize the components of the claim. *Schroeter Bros. Hdw. Co. v. Croatian "Sokol" Gymnastic Ass'n,* supra. The lien statement in this case provides no basis whatsoever for ascertaining the propriety of the amount demanded. The fact that Bryan requested no change orders would undoubtedly excuse compliance with the contractual requirement for such documentary evidence of authorized changes. However, the requirement of a "just and true account" is not a contractual requirement but is a condition of the right to take advantage of the benefit of the mechanic's lien law. " * * * [T]he fact that the remedy is extraordinary would certainly necessitate that a lien claimant substantially comply with the requirements of the statute in order to avail himself of the benefits thereof." *Mississippi Woodworking Co. v. Maher,* 273 S.W.2d 753, 755[1] (Mo.App. 1954). The account requirement, which is for the benefit of the public as well as the property owner (*Mitchell Planing-Mill Co. v. Allison et al.,* 138 Mo. 50, 40 S.W. 118 (1897)) is not supplied by prior oral explanation to the contractor.

The trial court did not err in concluding that the lien statement in this case failed to meet the requirement of § 429.080 of "a just and true account." The judgment must be affirmed.

Judgment affirmed.

All concur.