**REGER ROOFING & SIDING CO., a corporation, d/b/a Kirkwood Supply Company, Appellant,**

v.

**R & H ROOFING AND SUPPLY CO., a corporation, et al., Respondents.**

No. 40387.

Missouri Court of Appeals, Eastern District, Division Three.

May 15, 1979.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 15, 1979.

Application to Transfer Denied July 17, 1979.

David S. Purcell, Clayton, for appellant.

John Hanlon, Richard Coughlan, Clayton, John M. Howell, Chesterfield, for respondents.

REINHARD, Presiding Judge.

Plaintiff Reger Roofing and Siding Company appeals from the trial court's granting of defendants' motion for summary judgment. Plaintiff had filed a petition seeking enforcement of mechanic's liens against the property of various defendant homeowners.

Plaintiff Reger Roofing and Siding Company, a corporation doing business under the registered fictitious name of Kirkwood Supply Company, is in the business of selling roofing materials to other building contractors. Defendant R & H Roofing and Supply Company (R & H) was a roofing contractor which often purchased materials from Kirkwood Supply Company in the years preceding this litigation.

As of July, 1975, R & H was an established customer of plaintiff, and plaintiff maintained a running account with R & H covering those materials purchased and utilized by the latter. At this time, R & H was performing a contract with Mason-Cassilly, Inc., a corporation engaged in the development of residential subdivisions, and the construction and sale of homes. Under its agreement, R & H was to supply Mason-Cassilly with a portion of the roofing materials to be used on various roofs in developing Baxter Lakes Subdivision. R & H would purchase some of the roofing materials for the Baxter Lakes properties from plaintiff.

Sometime in late June or early July of 1975, plaintiff transmitted to its customers notice of a pending price increase. According to Mason-Cassilly and defendant R & H, they then agreed that such a cost increase might be avoided by ordering and prepaying for materials to be used in the Baxter Lakes Subdivision. Both R & H and Mason-Cassilly claim that plaintiff was cognizant of and party to this arrangement and had in fact helped compute the amount of the prepayment. Plaintiff denies that it was a party to this arrangement.

In early July, Mason-Cassilly transmitted two checks to R & H, allegedly pursuant to this prepayment agreement. The larger check, for $10,726.40, contained no notations keying its funds to materials for any particular lots in the Baxter Lakes Subdivision, although the check was accompanied by a list of colors, brands and quantities of materials to be ordered and held by R & H for use as directed by Mason-Cassilly. The smaller check of $4,475.20 was accompanied by a list of lot numbers, orders and color charts more specifically defining the intended application of those funds.

Gerald Revelle, the managing officer of R & H, took these two checks, along with a check from Kemp Homes, another contractor, and deposited all three in the checking account of R & H. On or about July 25, Revelle then drew a check for $26,754.45 with plaintiff as payee. In delivering this check of $26,754.45 to plaintiff, Revelle had no discussion with Richard Reger, president of Reger Roofing, who was absent at the time, and left no direction as to how plaintiff was to apply these funds to the R & H account.

At the time of the transmission of this check from R & H to plaintiff, R & H owed plaintiff approximately $31,702.13 for material, with $19,427.37 of that figure current

and $12,274.76 from invoices with ages between 30 to 60 days. According to the general practice between plaintiff and R & H, upon the presentation of a check to plaintiff from R & H, without directions for application, plaintiff would apply the amount to the oldest existing accounts of R & H. Consistent with this practice, plaintiff applied the check for $26,754.45 to the oldest accounts of R & H, rather than applying it to the materials to be supplied to R & H for use in the Mason-Cassilly and Kemp Home projects.[1]

In early November of 1975, after certain checks from R & H had been dishonored, plaintiff, after seeking to identify the lots on which its materials had been used, sent mechanic's lien notices to several owners of lots purchased from Mason-Cassilly in the Baxter Lakes Subdivision. These owners, named as defendants in plaintiff's petition to enforce the mechanic's liens and respondents herein, related their concern to Mason-Cassilly, which then contacted plaintiff to arrange discussions regarding the problem.

During the first two weeks in November, plaintiff met with representatives of Mason-Cassilly. At these meetings Mason-Cassilly explained to plaintiff the arrangement under which it had provided the funds partially comprising the $26,000 and presented plaintiff with a statement by Gerald Revelle outlining this arrangement. Mason-Cassilly also exhibited to plaintiff the checks Mason-Cassilly had given to R & H in July, and requested that the payments be credited to the proper account. The last of these meetings was completed prior to, though on the same day as, plaintiff's filing of the first mechanic's lien with the clerk of the circuit court.

Plaintiff later filed its petition to enforce the mechanic's liens, naming as defendants, R & H, the respective named homeowners of the lots in Baxter Lakes, and various lending institutions. Defendants, other than R & H,[2] subsequently filed a motion for summary judgment. As the basis for its motion, defendants contended that plaintiff knew *prior to filing the lien* that it had misapplied the funds from the $26,754.45 check and should have reapplied the funds to the proper account. According to defendants, by refusing such reapplication, plaintiff failed to file a "just and true account" under § 429.080 RSMo 1969, and was therefore precluded as a matter of law from enforcing a mechanic's lien against the property. The filing of a just and true account "is a condition of the right to take advantage . . . of the mechanic's lien law." *Malott Elec. Co. v. Bryan Enterprises, Inc.*, 549 S.W.2d 558, 561 (Mo.App.1977). Defendants supported their motion for summary judgment with various depositions and affidavits. In responding to the motion, plaintiff denied that, at the time of payment, it had any knowledge of an agreement as to the source and intended application of the July 25 check for $26,754.45. However, for the purposes of summary judgment only, plaintiff concedes that, prior to filing the mechanic's lien but after sending out notices of intention to file such liens, it was given notice that Mason-Cassilly had been a source of the funds for the July 25 check. The trial court granted defendants' motion for summary judgment and plaintiff appealed.

As its sole point on appeal, plaintiff urges that the trial court erred in granting the motion for summary judgment, because the notice in November of the source and intended application of the $26,754.45 was not effective as a bar to plaintiff's filing the mechanic's liens. Plaintiff contends that the crucial issue, which *is* disputed, is its knowledge at *the time of payment and application*, not simply the state of its knowledge at the time of filing the mechanic's liens.

---

1. Mason-Cassilly and R & H contend that these checks were transmitted to Reger with the understanding that the funds were to be applied only to materials to be ordered and shipped for use by those parties providing the funds conveyed by Revelle's check.

2. Plaintiff was granted a default judgment against R & H.

We recognize the general rule that when a debtor owes various items on account he has a right to direct the application of a partial payment to a creditor; absent such direction, however, the creditor may apply a partial payment as he believes necessary and appropriate to protect his interests. *General Plywood Corp. v. S. R. Brunn Const. Co.*, 511 S.W.2d 905, 908–909 (Mo.App.1974); *Herrman v. Daffin*, 302 S.W.2d 313, 315 (Mo.App.1957). However, an exception to this general rule is that when the creditor knows or is chargeable with knowledge of the source of the funds constituting that payment, and third party rights are involved, then that creditor has the obligation to apply the payment so as to protect the rights of the parties supplying those funds. *General Plywood Corp. v. S. R. Brunn Const. Co.*, 511 S.W.2d at 909; *Herrman v. Daffin*, 302 S.W.2d at 315–316. Consequently, if the creditor-materialman has or is charged with knowledge of the source of a payment and fails to properly apply it, then the creditor will not have offered a just a true account of the demands due him and may not then enforce a lien against the properties that would have been protected by proper application of the payment. *N. O. Nelson Mfg. Co. v. Doherty*, 191 S.W. 983, 986 (Mo. banc 1917); *Herrman v. Daffin*, 302 S.W.2d 313; *Holekamp Lumber Co. v. Skay*, 65 S.W.2d 669, 671–672 (Mo.App.1933).

Considering plaintiff's conceded knowledge of the source of the July 25 payment, in light of the above principles, our review of the propriety of summary judgment appears well-focused: was the November notice to plaintiff, that being the earliest uncontested notice, sufficient as a matter of law to preclude it from enforcing mechanic's liens against the various lots in Baxter Lakes? If so, then the uncontested fact would reveal a bar to enforcement of plaintiff's mechanic's liens, and the granting of summary judgment was appropriate.

We have reviewed the cases cited to us by both parties, discovering a disconcerting lack of explication along our course. However, we have concluded that this cause is controlled by the decision in *N. O. Nelson Mfg. Co. v. Doherty*, 191 S.W. 983, an aging but significantly similar set of circumstances. In *Nelson*, N. O. Nelson Manufacturing Company, a dealer in plumbing supplies, had contracted with Charles Doherty, a contractor, to furnish and install the plumbing materials in a building owned by Charles Vrooman and the St. Regis Realty & Investment Company. Nelson brought the action to enforce a mechanic's lien against the St. Regis building for a sum allegedly owed for materials provided for use in that building.

The evidence revealed that sometime during the work on the building, the owners gave Doherty a check for $2,000 for payment on account of their building. Doherty deposited the check, then drew on his own account a check for N. O. Nelson Manufacturing, with a receipt directing that $1,000 be applied to the St. Regis materials, which receipt was signed by an officer of Nelson. However, that officer of Nelson later recovered the receipt and left another with Doherty which recited only that $2,000 had been received on account of Doherty. Nelson applied no part of the $2,000 to the St. Regis materials. In the action to enforce the mechanic's lien, the building owners contended that the $2,000 should have been credited to the St. Regis materials, because of Nelson's knowledge of the source of the funds.

In holding against Nelson Manufacturing, the court, after referring to the conflicting testimony regarding Nelson's knowledge of the source of the payment, stated as follows:

It *conclusively* appears from the testimony, however, that *prior* to the filing of the lien account herein, the officers and employees of plaintiff had actual notice that Vrooman had paid Doherty said $2,000 to be applied on the St. Regis account. It further appears that Vrooman made a demand upon plaintiff, repeatedly before the filing of said account, to have the $2,000 aforesaid applied upon Doherty's St. Regis account. After plaintiff's employees had full notice that the $2,000 was the money advanced and paid by Vrooman . . . on the St. Regis account, they should have corrected the credit which they gave Doherty on his old

account, and placed the same to the credit of the St. Regis account for the $2,000. (Emphasis in original.)

191 S.W. at 986.

A similar situation is evident here. Whatever Reger's knowledge at the time of payment, plaintiff admits receiving notice, "prior to the filing of the lien account herein," that the funds had come from Mason-Cassilly, said notice including presentation of the checks Mason-Cassilly had given to R & H. Furthermore, it is uncontested that, again prior to plaintiff's filing the first lien, Mason-Cassilly demanded that the earlier payments be credited to the proper account. On the authority of *N. O. Nelson Mfg. Co. v. Doherty*, plaintiff's failure to so credit the proper account upon receiving notice of the source of the funds precludes it, as a matter of law, from maintaining its mechanic's liens against the properties of defendant homeowners. *N. O. Nelson Mfg. Co. v. Doherty*, 191 S.W. at 986. Summary judgment was therefore appropriate, there being no genuine issue of material fact precluding the court's action. *Edwards v. Heidelbaugh*, 574 S.W.2d 25, 27 (Mo.App. 1978).

Judgment affirmed.

GUNN and CRIST, JJ., concur.