**ANCHOR LUMBER COMPANY, A Corp., Plaintiff–Respondent,**

v.

**UNITED EXTERIORS, INC. et al., Defendants–Appellants.**

**No. 40441.**

Missouri Court of Appeals,
Eastern District,
Division Four.

Aug. 12, 1980.

Patricia E. Rousseau, Legal Services of Eastern Missouri, Inc., University City, for E. A. & J. K. Custer.

Thomas M. Lang, Love, Lacks, McMahon & Schwarz, St. Louis (Clayton), for plaintiff—respondent.

SATZ, Judge.

Defendants, E. A. Custer and Judith K. Custer, husband and wife, appeal from a judgment enforcing a mechanic's lien against their property. We affirm.

This case was tried upon a stipulation of facts. By written contract, defendants employed United Exteriors, Inc. (United), a general contractor, to build a cedar deck on to defendants' residence. Plaintiff Anchor Lumber Co., a supplier, furnished building materials to United. At the time the contract between United and defendants was executed, United owed plaintiff approximately $2,600.00. Nonetheless, plaintiff extended United additional credit and furnished United additional materials. Shortly after United entered into the contract with defendants, United affixed a "Notice to Owner" to the contract, informing defendants that the failure of a contractor to pay laborers and suppliers could result in the filing of a mechanic's lien, that the lien could be avoided by obtaining "lien waivers" and that failure to obtain "lien waivers" could result in the labor and materials being paid for twice. Defendants paid United for the construction of the cedar deck, but United failed to pay plaintiff for the materials supplied and used. Plaintiff perfected a mechanic's lien under Chapter 429, RSMo 1978, and a judgment was entered enforcing the lien against defendants' property.

In their first attack against the judgment, defendants advance an admittedly novel theory. Defendants concede that a materialman has the statutory right to enforce a lien against property for payment of materials supplied to a contractor and used on the property in question. However, defendants urge that a materialman should owe the property owner a duty which parallels the materialman's right to enforce its lien. According to defendants, a materialman should owe the property owner the duty to exercise reasonable care in extending credit to the contractor, and, defendants reason, the materialman's breach of this duty should operate as a bar to the enforcement of the materialman's parallel right to enforce its lien. In the instant case, defendants argue, plaintiff, a materialman, owed defendants, property owners, the duty to exercise reasonable care in extending

credit to United, a contractor; plaintiff breached this duty; and, therefore, plaintiff's lien against defendants' property should not be enforced.

■ Defendants contend that neither the purpose nor the language of our lien statutes preclude the imposition of this duty or preclude the use of the breach of this duty as a defense. On the contrary, defendants argue, our courts use equitable principles in interpreting and applying our lien statutes in order to do substantial justice between the parties and will not enforce the lien when a materialman is at fault. For example, defendants point out, our courts recognize waiver and estoppel as proper defenses to the enforcement of a mechanic's lien. Since these defenses are based on fault, defendants argue, the fault of negligently extending credit should likewise be a defense. We disagree.

Contrary to defendants' conclusion, imposition of a duty on plaintiff to exercise reasonable care in the extension of credit is inconsistent with the purpose of the lien statutes. The purpose of the lien statutes is to encourage construction by protecting materialmen from non–payment. *E. g., Putnam v. Heathman,* 367 S.W.2d 823, 828 (Mo.App.1963). The right created to insure this purpose is given to the materialman who has furnished material to "improve" property, and this right permits a materialman to enforce a lien against the "improved" property. *Putnam v. Heathman, supra* at 828. The correlative duty created is the duty imposed upon the property owner to make certain that payment has been made for all materials delivered to the job. Defendants' theory would turn the materialman's statutory right and the property owner's correlative duty on their respective heads and create a statutory right in the property owner and impose a correlative duty on the materialman where no such right or correlative duty exists. Moreover, the statutes determine the class of persons to be protected and the hazard to be protected against. We cannot change the class

or hazard. *See, Kavanagh v. Dyer O'Hare Hauling Co.,* 189 S.W.2d 157, 160 (Mo.App. 1945); see also, *State of Mo. ex rel. Zoological Park Subd., St. Louis v. Jordan,* 521 S.W.2d 369, 372 (Mo.1975). Materialmen are the class protected by the lien statutes and the hazard they are protected against is non–payment. Defendants as property owners are not within the class protected and the hazard defendants seek protection for is not the hazard protected by the statutes. Therefore, their theory of defense has no statutory basis. *See, Purdy v. Foreman,* 547 S.W.2d 889, 892 (Mo.App.1977); see also, *Sayers v. Haushalter,* 493 S.W.2d 406, 409 (Mo.1973).

■ Defendants' reliance on equitable principles is also misplaced. Arguably, there are equitable principles inherent or implicit in our lien statutes. *Johnson v. Brill,* 295 S.W. 558, 562 (Mo.1927). Thus, the right to enforce the lien may well reflect the equity of paying for work done and materials delivered, or, legally more precise, may reflect the equitable principles of restitution or unjust enrichment. These principles merely underpin the court's liberal construction of the lien statutes when necessary to secure payment by enforcement of a materialman's lien. *Peerless Supply Co. v. Industrial Plumbing & Heating Co.,* 460 S.W.2d 651, 657–658 (Mo.1970); *State ex rel. Erbs v. Oliver,* 237 S.W.2d 128, 132 (Mo. banc 1951). Logically, these principles would work against defendants' proposed derogation of the right to enforce the lien. For this reason, apparently, defendants use other equitable principles to support their theory of defense. Admittedly, as defendants point out, a materialman may waive his right to enforce a mechanic's lien, by an intentional act or statement, see, *E. C. Robinson Lumber Co. v. Ladman,* 255 S.W.2d 72, 76 (Mo.App.1953), or, he may be estopped from enforcing this right, if his statement or act is inconsistent with the enforcement and the property owner acted upon the statement or act to his detriment. *See, Peerless Supply Co. v. Industrial*

*Plumbing & Heating Co., supra* at 665–667. However, each of these defenses grows out of principles which are separate and independent from principles embodied in the lien statutes and these defenses may be used against the enforcement of any right. Neither defense is explicit nor peculiarly implicit in our lien statutes. There is nothing in the lien statutes which would permit us to limit plaintiff's right to enforce its lien by imposing a parallel duty on plaintiff requiring it to exercise reasonable care in the extension of credit to the contractor.

To the contrary, under the lien statutes, plaintiff, as a materialman, is not compelled to evaluate the credit of the contractor. Plaintiff may look to defendants' property as security and compensation for materials supplied. Section 429.012 RSMo 1978 requires the contractor to give notice to the property owner that liens may be asserted against the property in question. United, the contractor, gave this notice to defendants, the property owners. The notice is explicit recognition of defendants' duty, as property owners, to make certain that payment is made for all materials supplied. Plaintiff may rely on the existence of this duty and extend credit to the contractor because of the availability of a mechanic's lien rather than the financial status of the contractor. *See, e. g., Berkshire v. Hall*, 202 S.W. 414, 419 (Mo.App.1918).

Furthermore, we find no urgent societal need for imposing the duty sought by defendants. There are practical steps which, if taken, could have protected defendants. For example, defendants could have obtained lien waivers. *See, Peerless Supply Co. v. Industrial Plumbing & Heating Co., supra* at 667. Also, before making any payments to United, defendants could have ascertained if United were indebted to plaintiff, and if United were so indebted, then defendants could have issued a check, jointly payable to United and plaintiff. Plaintiff's endorsement along with United would constitute payment for material and, thus, a mechanic's lien would be avoided. Since these protective devices, among others, were available to defendants, it is not unreasonable nor inequitable to look to defendants for payment of the materials furnished.

Defendants' second contention is neither clear nor explicit. Apparently, defendants contend that plaintiff failed to allocate any payments made by United to the specific account which reflected the materials supplied for defendants' job, and, therefore, defendants argue, plaintiff waived its right to enforce a lien against defendants' property. We disagree.

Generally, when a debtor owes various items on account, he has the right to designate which items should be credited by a partial payment. *General Plywood Corp. v. S. R. Brunn Const. Co.*, 511 S.W.2d 905, 908–909 (Mo.App.1974). Absent such direction, the creditor may apply a partial payment as he believes necessary and appropriate to protect his interests. *Herrman v. Daffin*, 302 S.W.2d 313, 315 (Mo.App. 1957). However, when the creditor knows or is chargeable with knowledge of the source of the fund constituting payments, the creditor is obligated to apply the payment so as to protect the rights of the party supplying the funds. *General Plywood Corp. v. S. R. Brunn Const. Co., supra* at 909; *Herrman v. Daffin, supra* at 315–316. The latter rule is applicable to payments made by a contractor to a materialman. "Consequently, if the creditor–materialman has or is charged with knowledge of the source of the payment and fails to properly apply it, then the creditor[materialman] will not have offered a just [or] true account of the demands due him and may not then enforce a lien against the properties that would have been protected by proper application of the payment." *Reger Roofing & Siding Co. v. R & H Roofing and Supply Co.*, 582 S.W.2d 716, 719 (Mo.App.1979).

Defendants argue that plaintiff failed to allocate payments made by United so as to protect defendants' interests. However, de-

fendants have not marshalled any evidence from the record which shows that plaintiff knew or was chargeable with knowledge that defendants were the source of any payments made by United. This point is without merit.

■ Defendants also contend the procedures of Chapter 429 RSMo 1978 for processing a mechanic's lien violate the Due Process Clauses of the United States and Missouri Constitution. This identical contention was recently rejected by our Supreme Court in *Home Building Corp. v. Ventura Corp.*, 568 S.W.2d 769, 775 (Mo. banc 1978). We follow the mandate of this decision and reject defendants' present contention.

Judgment affirmed.

SMITH, P. J., and ALDEN A. STOCKARD, Special Judge, concur.