STATE OF MISSOURI ex rel. PEMIS-COT COUNTY, MISSOURI, Plaintiff/Appellee/Cross–Appellant,

v.

WESTERN SURETY COMPANY, Defendant/Appellant/Cross–Appellee,

v.

Jack L. DAVIS, Third Party–Defendant/Appellant/Cross–Appellee.

Nos. 94–2217, 94–2400.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 15, 1994.

Decided April 3, 1995.

John L. Oliver, Cape Girardeau, MO, argued, for appellant.

Joseph C. Blanton, Jr., Sikeston, MO, argued, for appellee.

Before BOWMAN and LOKEN, Circuit Judges, and BOGUE,* Senior District Judge.

LOKEN, Circuit Judge.

Jack L. Davis is the Sheriff of Pemiscot County, Missouri ("the County"). Western Surety Company ("Western") is the surety on a $50,000 "official bond" that Sheriff Davis posted pursuant to Mo.Rev.Stat. § 57.020, guaranteeing that he would "faithfully discharge his duties as Sheriff." The County commenced this diversity action to recover the full amount of Western's bond, alleging that Sheriff Davis breached his official duty to the County by failing to pay over prisoner transportation fees received from the United States Marshals Service ("USMS"). After Western filed a third party complaint against Davis, the district court granted summary judgment in favor of the County on its claim against Western, and in favor of Western on its third-party claim against Davis. Western and Davis jointly appeal.[1] We conclude that the district court lacked subject matter jurisdiction because the amount in controversy is only $50,000. Therefore, we reverse.

## I.

In July 1989, two County Commissioners, the County Clerk, Sheriff Davis, and a USMS representative met to establish the terms under which the County would house overflow federal prisoners at the Pemiscot County Detention Center. The County agreed to detain federal prisoners in the County jail for $40 per prisoner per day, but it declined a USMS request that the County transport federal prisoners to and from its jail. After the meeting, USMS and Davis separately discussed this latter request, and Davis agreed to provide transportation as necessary for an additional $7 per prisoner per day. Other County officials soon became aware of this "split agreement," but no formal action was taken, and there is conflicting evidence whether the County Commission ever approved Sheriff Davis receiving an additional fee for transportation services. Between July 1989 and September 1990, USMS paid Sheriff Davis $47 per day for federal prisoners housed at the County jail, and Davis forwarded only $40 per day to the County. Davis retained over $51,000 for transportation services under this arrangement.

During this period, Sheriff Davis personally owned all the Sheriff's Department vehicles used to transport federal prisoners and paid for the necessary insurance. In addition, Davis personally paid the guards used in transporting federal prisoners, who were County deputies working on their days off. No County employee transported federal prisoners on County time, and no County money or facilities were used in performing the transportation services. Davis deposited the money he received from USMS into the personal account he used to pay for his vehicle, personnel, and other operating expenses as Sheriff. He also used this account for transportation reimbursements from the County and for income from transportation services he provided to state agencies.

Although the County Attorney at one point opined that Davis's arrangement with USMS was not unlawful, the State Auditor who reviewed County finances disagreed. Her audit report declared that state law required Sheriff Davis to turn all USMS transportation fees over to the County, and that Davis could only be reimbursed his actual transportation expenses, as he would be for transporting state and local prisoners. Sheriff Davis vigorously disputed that opinion and declined to remit the transportation fees in question. When the parties were unable to resolve the politically sensitive issue, the County commenced this diversity action against Western, seeking to recover Western's $50,000 bond plus a statutory penalty

---

* The HONORABLE ANDREW W. BOGUE, Senior United States District Judge for the District of South Dakota, sitting by designation.

1. Davis does not dispute that he is liable to Western if Western is liable to the County on the bond.

and attorney's fees for Western's alleged vexatious refusal to pay.

Western's answer raised the defense that the district court lacked jurisdiction because the County's claim did not "exceed[ ] the sum or value of $50,000, exclusive of interest and costs," as required by 28 U.S.C. § 1332(a). After discovery, the County moved for summary judgment on the merits. When Western cross-moved for summary judgment on the jurisdictional issue, the County responded that its complaint satisfied § 1332(a) because it sought to recover $50,000 on the bond *plus* exemplary damages and attorney's fees for Western's "vexatious and unreasonable" refusal to pay the amount owed under the bond.

The district court granted the County's motion for judgment on the bond, concluding that Sheriff Davis improperly retained fees he collected for services incident to his official duties. The court denied the County's claim for exemplary damages and attorney's fees because Western "has acted in accordance with the wishes of Sheriff Davis [and] has not acted vexatiously in any way other than disagreeing as to whether [it] was liable on the bond." The court's memorandum did not discuss the jurisdiction issue, and Western filed a motion to reconsider on that ground. In response, the County argued that "the Court must consider the claim by Plaintiff as pleaded at the time the action is commenced," including the claim of vexatious refusal to pay. The district court denied the motion to reconsider, reasoning that the conclusory allegations in the County's complaint "were sufficient to include the claim for vexatious refusal to pay in the determination of the amount in controversy."

Western now appeals the district court's judgment that it is liable on the bond, arguing both lack of jurisdiction and the merits. The County cross-appeals the dismissal of its claim for exemplary damages. For the reasons explained below, we conclude that we need only address the jurisdiction issue.

## II.

■ Like the district court, we agree with the County that its complaint alleges an amount in controversy that exceeds $50,000, as 28 U.S.C. § 1332(a) requires. *See Allison v. Security Benefit Life Ins. Co.,* 980 F.2d 1213, 1215 (8th Cir.1992) (punitive damages included in determining amount in controversy). However, when a federal complaint alleges a sufficient amount in controversy to establish diversity jurisdiction, but the opposing party or the court questions whether the amount alleged is legitimate, the party invoking federal jurisdiction must prove the requisite amount by a preponderance of the evidence. *See McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936). Once jurisdiction is challenged, "if, from the proofs, the court is satisfied to a [legal] certainty that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable[2] for the purpose of conferring jurisdiction, the suit will be dismissed." *St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 289, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938).

■ As these Supreme Court cases make clear, "the plaintiff's allegations of requisite jurisdictional amount are not necessarily dispositive of the issue." *Zunamon v. Brown,* 418 F.2d 883, 885 (8th Cir.1969). Moreover, because the County may only recover $50,000 on the bond, its claim for exemplary damages is critical to establishing the requisite amount in controversy for diversity jurisdiction. When determining the amount in controversy, we scrutinize a claim for punitive damages more closely than a claim for actual damages to ensure that Congress's limits on diversity jurisdiction are properly observed. *See Larkin v. Brown,* 41 F.3d 387, 389 (8th Cir.1994). Therefore, when Western challenged the County's allegation of the requisite amount in controversy after extensive discovery, the district court erred in looking only at the County's *allegation* that Western is liable for exemplary damages because of its vexatious refusal to pay on the bond. On appeal, we must deter-

---

**2.** Though "colorable" as used today often means "tenable," in traditional legal usage the word meant "counterfeit" or "feigned." *See Black's Law Dictionary* 265 (6th ed. 1990).

mine whether the summary judgment *proofs* establish to a legal certainty that the County did not have a valid claim for exemplary damages.

## III.

■ Missouri law permits a plaintiff seeking recovery under an insurance policy to recover a prescribed penalty and a reasonable attorney's fee if the insurer "has refused to pay such loss without reasonable cause or excuse." Mo.Rev.Stat. § 375.420; *see also* § 375.296. These statutes are penal in nature and narrowly construed; their purpose is to deter the insurer from vexatiously refusing to pay "after becoming aware it has no meritorious defense" to the insured's claim. *See Morris v. J.C. Penney Life Ins. Co.*, 895 S.W.2d 73, 76 (Mo.App.1995).

■ To recover penalties for vexatious refusal to pay, an insured must prove that the refusal was willful and without reasonable cause. If there is an open question of fact or law determinative of coverage, the insurer may insist upon a judicial determination of that question without incurring this statutory penalty. *See Hopkins v. American Economy Ins. Co.*, 896 S.W.2d 933, 939 (Mo. App.1995); *Mears v. Columbia Mut. Ins. Co.*, 855 S.W.2d 389, 394 (Mo.App.1993); *Joachim Sav. & Loan Ass'n v. State Farm Fire & Cas. Co.*, 764 S.W.2d 648 (Mo.App.1988). However, the existence of a litigable issue will not insulate the insurer from penalty if there is other evidence that the insurer's conduct was vexatious and recalcitrant. *See DeWitt v. American Family Mut. Ins. Co.*, 667 S.W.2d 700, 710 (Mo. banc 1984).

On appeal, the County argues that Western's letter denying the County's claim under the bond reflects both inadequate investigation and inadequate explanation of its denial, either of which is sufficient to prove a vexatious refusal to pay under Missouri law. Western's denial letter stated:

As surety, our liability is strictly derivative of that of our principal [Sheriff Davis]. Under the circumstances, we will await adjudication of our principal's liability.

Western enclosed with this letter a three-paragraph letter from Sheriff Davis's attorney disputing the County's claim that Davis had improperly retained USMS fees. The State Auditor's report, on which the County heavily relies, also included a response from Sheriff Davis disputing the Auditor's conclusions and outlining Davis's position. Thus, Western's statement that it was deferring to Sheriff Davis was more than sufficient to apprise the County of the reason for Western's denial. The County's assertion to the contrary is patently without merit.

■ The County's more serious contention is that Western was vexatious in refusing to independently investigate the merits of the County's claim. However, it is undisputed that Sheriff Davis was primarily liable for that claim, even though the County was permitted to proceed directly against Western under the official bond. Missouri courts have expressly held that the surety for a solvent principal need not independently investigate a claim on a bond to avoid a vexatious refusal penalty:

Federal under its contract of suretyship had a direct obligation to materialmen, but it also had a right of indemnification from Brunn.... Were Federal to have undertaken its own investigation of plaintiff's claim wholly independent of Brunn, it might reach a conclusion different from that reached by Brunn.... This would put Federal in the awkward position of possibly settling with plaintiff, only to buy a lawsuit against its own principal, Brunn.... So, all logic called for Federal to cooperate with Brunn, and in this case to defer to Brunn's investigation.... *Such deference in itself cannot be stigmatized as unreasonable.*

*General Plywood Corp. v. S.R. Brunn Constr. Co.*, 511 S.W.2d 905, 912 (Mo.App. 1974) (emphasis added). *See also Lindsey Masonry Co. v. Jenkins & Assocs., Inc.*, 897 S.W.2d 6, 17 (Mo.App.1995). Therefore, the County could never recover on its claim that Western was vexatious merely because it acted in accordance with Sheriff Davis's direction.

However, if a surety rejects a claim in deference to its principal, the surety is only insulated from vexatious refusal penalties "where the record demonstrates that the principal presented a reasonable, albeit unsuccessful, defense." *United States ex rel. Vaught Co. v. F.D. Rich Co.*, 439 F.2d 895, 905 (8th Cir.1971) (applying Missouri law; quoted approvingly in *General Plywood*, 511 S.W.2d at 912). That is the teaching of *Housing Auth. of Clinton v. Baumann*, 512 S.W.2d 436 (Mo.App.1974), where a vexatious refusal penalty was imposed upon a surety who deferred to a principal whose initial refusal to pay was indefensible.

In this case, the County argued to the district court that Western's refusal to pay "in the face of well established authority and the State Auditor's report" was vexatious and unreasonable. Even construing this as properly raising an issue under *F.D. Rich* and *Baumann*, we are unpersuaded. On the merits, the County's claim that Sheriff Davis improperly retained USMS fees for transporting federal prisoners raised difficult factual and legal questions, such as whether Sheriff Davis entered into a separate agreement with USMS for transportation services in his personal capacity; whether Davis failed to remit a "fee accruing to his office" within the meaning of Mo.Rev.Stat. § 57.410; whether Missouri cases holding that a public official may not receive compensation beyond that provided by statute apply to this situation; whether the County is estopped to seek payment of fees it knowingly allowed Davis to earn and retain; and whether Davis can be liable on his bond for a good-faith mistake of law.

These are complex issues. *See, e.g., State v. Gomer*, 340 Mo. 107, 101 S.W.2d 57, 68–69 (1936). We disagree with the County's contention that the State Auditor's report resolved these open issues so that Sheriff Davis and Western were obligated to concede liability on the bond. For example, that report states that the USMS agreement "clearly indicates that the transportation of federal prisoners, was, and will continue to be performed by employees of the county," yet it is undisputed that Davis personally bore all costs of prisoner transport, and no county facilities, funds, or employee time were used. Moreover, the State Auditor, a non-lawyer, relied heavily on statutory analysis in reaching her conclusions.

The district court ultimately agreed with the County on the merits of these issues, but it found that Western and Davis "had a reasonable belief in disputing the open issue of law as to liability upon the surety bond." We do not reach the merits. In our view, the district court's well-justified finding of an open issue of law establishes to a legal certainty that, on this record, Western could never be liable for a statutory vexatious refusal penalty, and therefore the amount in controversy does not exceed $50,-000. *See Crenshaw v. Great Cent. Ins. Co.*, 482 F.2d 1255, 1258–59 (8th Cir.1973).

The judgment of the district court is reversed and the case is remanded with instructions to dismiss the County's complaint for lack of jurisdiction and Western's third-party complaint as moot.[3]

---

3. Because the County only has a legitimate claim for payment of $50,000 on the bond, Western's third party claim against Sheriff Davis does not appear to satisfy the jurisdictional minimum. *See* 28 U.S.C. § 1367(b) (in diversity cases, third party claims must independently satisfy the amount in controversy requirement). Rather than decide this question, which the parties did not brief, we will dismiss the third party complaint as moot.