Lawrence J. LEONARD, d/b/a Leonard Construction Co., Respondent,

v.

David L. BENNETT and Susan D. Bennett, and Miles Homes Division of Insilco Corporation, Appellants.

No. 45247, 45252.

Missouri Court of Appeals, Eastern District, Division Five.

May 29, 1984.

Nicholas G. Gasaway, Hillsboro, for appellants David L. Bennett, et al.

James M. Martin, St. Louis, for appellants Miles Homes Div. of Insilco & Landmark Prop.

Earl R. Blackwell, Hillsboro, for respondent.

HAROLD L. LOWENSTEIN, Special Judge.

An initial statement of this court-tried case involving a mechanic's lien may enable the reader to make some sense of the statement of facts as will next be presented. Leonard, the plaintiff-contractor, was approached by a Mr. Riley to build a foundation for a house for he and Mrs. Riley. After completion, an invoice was sent to Riley at a corporate office. The property at all times belonged to Mr. and Mrs. Bennett and is titled in the names of David Bennett and Susan Laney, Ms. Bennett's maiden name. During the contractor-Leonard's attempts to collect for the work done, the landowners still used the name of Riley and then ultimately told of their real names. The a) defendants, b) landowners, c) Rileys, d) Bennetts, e) Laney and f) Climate Corporation, as they appear therein, are all the same. The confusion is multiplied for the reason that the contractor-plaintiff, who was successful at trial, and the respondent here, didn't prepare a brief and therefore didn't come to oral argument. The reader is also forewarned that there were two other defendants in the lien suit, the original holders of first and second mortgage liens against the property. Both liens were assigned of record prior to the work in question. The assignees were not parties to the free-for-all below where a lien was impressed on the land. The mechanic's lien was given priority to the second deed of trust of defendant-appellant Miles Homes. Defendant Landmark Properties, holder of the purchase money mortgage, was found to have a preference over the mechanic's lien of the plaintiff. No appeal was taken on this point.

The trial court awarded respondent Lawrence J. Leonard d/b/a Leonard Construction (Leonard) a mechanic's judgment and lien of $6,870.00 for concrete foundation work performed for the appellants David L. and Susan D. Bennett. Appellant Miles Homes Division of Insilco Corporation (Miles Homes) also appeals from the court's ruling which gave respondent's mechanic's lien priority over its claims as cestui que trust of the second deed of trust to the property involved.

The facts of this case are rather strange in that the contracting for the work to be done (the laying of a foundation for a home), was negotiated by the Bennetts under the assumed names of Mr. and Mrs. John Riley, and other communications with Leonard Construction were also conducted under those assumed names. The record shows that Leonard was contacted by someone identifying himself as a Mr. John Riley, who requested that he submit a bid on a foundation for the property in question and that on May 8, 1980 he met Riley at the job site and examined some plans. Mrs. Riley was also there. The respondent then furnished a bid on the work based on a diagram provided by Mr. Riley. Leonard then testified that he was again contacted by Mr. Riley and was asked to meet him at the site to discuss pouring the foundation. At that meeting he informed Riley that the foundation could not be poured because the excavation was out of level and needed to be leveled up prior to pouring. Riley asked Leonard if he knew someone who could "level up" the basement. Leonard got someone to do the work for $408.00.

After the excavation work was completed, Riley again called Leonard and arranged for his foreman Don Anderson to meet Leonard at the job site with a set of plans which included a few changes from the first diagram. Leonard told Mr. Anderson that in light of the changes he thought that he should refigure the bid. He worked up a "revised bid" figuring in the changes in the foundation pouring and adding in the $408.00 for the excavation, for a total of $6,870.00. Don Anderson

requested that Leonard meet him that evening to give him the revised bid. Leonard gave Anderson the bid, and Anderson told him that he would present it to Mr. Riley that evening.

Leonard's work on the project started on June 16, 1980 and was completed in about 10 days. During the time that the construction was in progress, Mr. Anderson showed up at the site and had Leonard correct an alleged oversight by allowing for a sunken living room. Leonard made the change without charge. Upon completion of the job Leonard mailed an invoice to Riley at Riley's business address, Climate Corporation, 116 Elm. After a month with no response to the invoice and no return of the invoice by mail, Leonard went to the address that was on the business card that Mr. Riley had given him. When he arrived at that address he found a small house that belonged to an elderly man who said that he had never heard of Climate Corporation or John Riley before. At that point Leonard checked with a local land developer and had them look up the owners of the property. He was informed that David Bennett and a Susan Laney (Mrs. Bennett's maiden name) owned the property. After calling several numbers given him by the land developer, Leonard was able to contact Mrs. Bennett who told him that she would have Mr. Bennett call him that evening. At this point Leonard still believed Mr. Riley and Mr. Bennett were two different people. When Mr. Bennett called that evening he told Leonard that he had paid Mr. Riley the money for the foundation, and that Mr. Riley had gone to Florida with the money to visit his sick father. Mr. Bennett told Leonard that he was satisfied with the job and that he was in the process of selling his house and it would be closed in about a month, at which time he would have enough money to pay for the foundation.

After another month without payment Leonard went to Mr. Bennett's new home address. At the home he met Don Anderson and Mrs. Riley told Leonard that her husband had gone to Florida a month before and she hadn't heard from him for a week or two, but that she would see that he was paid for the foundation. Soon after this meeting, the respondent had his attorney draw up a notice of mechanic's lien and personally served it on Mrs. Bennett at her place of work. *It was at this time Mr. Leonard observed that Mrs. Bennett was the same person he had met at the original meeting in May as Mrs. Riley.* Leonard then asked Mrs. Bennett (a/k/a Mrs. Susan Riley and Susan Laney), to have her husband call him. When Mr. Bennett called, the respondent confronted him with the fact that his wife was the same person that he had met earlier as Mrs. Riley and that he suspected that Mr. Bennett was actually Mr. Riley. Bennett at first denied the accusations but later admitted that he was also Mr. Riley. Leonard testified that whenever he had talked to Mr. Bennett in the past Bennett had always said that he was going to pay for the foundation work, but as soon as he found out Bennett was Riley, Bennett refused to pay.

The Bennetts', nee Rileys', testimony, found not believable by the judge, was that they never authorized the work done by Leonard. They explained their use of fictitious names and corporate affiliations as a tool to better bargain with contractors.

## I. THE BENNETTS

The Bennetts raise three points of error on appeal. They first contend there was no contract between the plaintiff and either of them, but even if there were this was jointly held property and Mrs. Bennett's interest was not subject to a lien since she never agreed to the work. Their second point contends that the judgment of the trial court was rendered as a result of bias and prejudice on the part of the judge. The final point of error contends the court committed prejudicial error by admitting in evidence Leonard's exhibit No. 6, for the reason that the admission of this exhibit was not preceded by proper foundation testimony, and said exhibit comprised the entire proof of respondent's compliance with

RSMo. § 429.012 RSMo. 1978.[1] The judgment was predicated on a finding Leonard was an original contractor.

All three of the Bennetts' points on appeal are without merit and are ruled against them.

■ The first point the Bennetts argue in their brief is that the record fails to demonstrate any evidence of a contract. This argument is totally without merit. Although the Bennetts are correct in arguing that Leonard cannot claim a mechanic's lien in the absence of a contract, in the instant case a contract existed. Although Leonard's final proposal form contained a signature line which was not signed by either Mr. Bennett or Mr. Riley, Mr. Bennett's agent Mr. Anderson ratified that contract by appearing at the site while the work was in progress, and ordering changes in the work. The statute granting mechanic's liens allows that such liens may come into existence "... by virtue of *any contract* with the *owner* or proprietor *or his agent* ...." (Section 429.010 RSMo. 1978, emphasis added.) Mr. Anderson was clearly Mr. Bennett's agent acting under actual authority or in the very least apparent authority. The law in Missouri is, "[t]hough a written contract be not signed by one or both of the parties, the acceptance by one of performance by the other validates the instrument, and imposes on the acceptor the corresponding obligation provided therein." *Sunbury v. Aaron*, 136 Mo.App. 222, 116 S.W. 431, (1909). *See also Brandt v. Beebe*, 332 S.W.2d 463, 466 (Mo.App. 1959); *Mabry v. Swift & Co.*, 145 S.W.2d 163, 165 (Mo.App.1940). The conduct and actions by these appellants is such they cannot deny their inducement and acceptance of the work done by Leonard. They are estopped from denying a contractual obligation with Leonard.

The Bennetts also contend that the record fails to establish any agency or authorization by Susan Bennett, a/k/a Susan Riley and Susan Laney, that her husband acted for her in seeking to have bids submitted for the concrete foundation work, or that she participated in any negotiations or assented to any contract for the work which was done. They cite *Badger Lumber & Coal Co. v. Pugsley*, 227 Mo.App. 1203, 61 S.W.2d 425 (1933) in which the court held against the plaintiff trying to enforce a mechanic's lien, finding that there was insufficient evidence to show the wife had ratified her husband's contract. The case at bar is clearly distinguishable. Even though the court in *Badger Lumber & Coal Co.* concluded that ratification had not been specifically pleaded it noted:

> ... still the fact that there may be evidence in the record bearing upon that issue of ratification that was not specifically objected to, we conclude to give full consideration to this testimony for whatever purpose it may serve in the determination of the equities in this case. *Id.* at 427.

The court in *Badger Lumber & Coal Co.* proceeded to give the record a thorough examination to determine if a ratification of the husband's contract existed. The rule as to wife's agency and ratification is also cited in *Badger Lumber & Coal Co.* where it is said:

> Though there may have been no original agency, there may be such express or implied ratification of the husband's contract as to render a married woman's land liable for the improvements made thereon. *Id.* at 427.

■ In examining the record in the instant case there appears substantial evidence of Susan Bennett's assent for her husband to act as her agent in contracting for work to be done to their jointly owned property for their mutual benefit. Susan's use of a pseudonym as well as her statements and promises of payment to coincide with those of her husband detract from any favorable consideration of this argument. There appears nowhere in the record an objection to the use of a theory of ratification or estoppel, and this court may examine the record for evidence demonstrating ratification of David Bennett's contract, by

1. All statutory references are to RSMo. 1978, unless otherwise indicated.

his wife. In the factually similar case of *Poore v. International Paper Company,* 455 S.W.2d 13, 20 (Mo.App.1970) the property involved was, at the time the materials were furnished, jointly owned by husband and wife as an estate by the entirety. The husband was a builder, and the wife collaborated in buying the lot, in borrowing the money to build, in signing the warranty deeds and deeds of trust, and in knowing that materials would be bought and that her husband was buying them with funds secured by their jointly owned property. The court held the wife impliedly had ratified her husband's construction contract and was subject to the mechanic's lien. In the instant case the lot was purchased in both David Bennett's and Susan Laney's name. Susan, soon after the purchase, married David Bennett, and although her maiden name still appears on the title, they own the property together as husband and wife. Their names also appear jointly on the deeds of trust which were used to secure the loans for purchase and construction on the land. In *Bovard v. Owen et al.,* 30 S.W.2d 154, 156 (Mo.App.1930), the court stated:

> ... When a husband enters into a contract for the erection of buildings upon his wife's land, the fact that the wife takes a wifely interest in improvements being made on her property where she lives is not alone sufficient to estop her from denying that a contract made by her husband was for her benefit, nor to show that she ratified it, nor that the husband was her agent. *The rule is different if the wife gives a deed of trust on her property to raise means to be used by the husband in making the improvement.* (Citations omitted, emphasis added.)

In the instant case, the court's conclusion in *Poore v. International Paper Company, supra,* at 21, is applicable where they stated:

> To conclude that her activities were merely in discharge of her 'wifely duties' and that her husband was not acting in her behalf, as well as his own, and with her full knowledge and authorization, would in our opinion, be a wholly unjustified conclusion. To deny application of the mechanic's lien statute, a remedial law, here would be a travesty upon the principles of equity and justice. The cases cited herein upholding the lien, where the issue was the wife's participation, holding that signing the note and deed of trust for the construction loan, is by itself just about sufficient to estop the wife from denying her husband's agency or successfully invalidating the mechanic's lien.

There was substantial evidence to demonstrate that Susan Bennett assented to her husband's agency in contracting for the foundation work.

█ Appellants' second point merits brief discussion. In it, they point to statements and questions of the judge as indicating his bias and prejudice toward them. The great bulk of the comments complained of by the appellants concern their use of false names, which they admit they used in "bid negotiations" with the plaintiff-contractor. An examination of the record indicates the statements were made to adduce evidence and an understanding by the judge upon the issues, and as stated by this court in *Crimi v. Crimi,* 479 S.W.2d 195 (Mo.App.1972), "... did not indicate any bias or prejudice." *Id.* at 197. The trial court's attempts to fathom the reason for the landowners' use of false names in this court tried case does not amount to prejudice or bias.

█ The appellants' final point is the charge of prejudicial error by the court in allowing the contractor after closing, to re-open the case and offer a copy of the invoice mailed by him after the job was finished (it was sent to Climate Corp., John Riley in St. Louis). The contractor had testified to sending this notice which is required under § 429.012. This statute requires an original contractor, such as the plaintiff, to send a notice to the person with whom he contracts, as applausable here with his first invoice, warning that failure to obtain "lien waivers" may result in liens

being put on the property and the owner paying notice. Notice under this statute is a condition precedent to the creation of a mechanic's lien by the original contractor. In light of the confusion already injected into the case by the landowners' use of different names, allowing the contractor to re-open the case to put the invoice with the notice into evidence was not prejudicial. Neither was it error to use a copy of the invoice sent out by Leonard. The landowners, not surprisingly, claim to have never received the original notice sent to John Riley. The appellants' argument that the best evidence rule was not complied with, under these facts, is without merit. Also without merit is their argument on appeal that insufficient foundation was laid to qualify this Exhibit 6 as a business record.

## II. MILES HOMES

The appellant Miles Homes was a beneficiary of a second note and deed of trust on the property in question. Prior to the start of the plaintiff Leonard's work in June of 1980 the instrument was assigned of record (November 5, 1979) to Miles Finance Company. Miles Finance was not made a party to this suit. The trial court in ordering a mechanic's lien gave it priority over Miles Homes. Miles Homes lost any interest by assigning the note and deed of trust. Why the plaintiff named Miles Homes as a party is open to question. There is a question of Miles Homes' standing here since the priority of the mechanic's lien is against property Miles Homes ceased to have any interest in long before commencement of the plaintiff's work. Miles Homes could not at the time of Leonard's work have taken any action to enforce rights it had under the second deed of trust and note. The standing issue aside, Miles Homes' point on appeal is basically that *no* lien should have been impressed since the lien claimant failed to name as parties the assignees of the first or second deeds of trust. The first deed of trust of Landmark was also assigned prior to the commencement of the work here. As mentioned earlier the defendant-assignor Landmark's lien was given priority. No appeal followed that decision. As with the second deed of trust, the assignee of Landmark was not made a party defendant. Miles Homes argues that Miles Finance as a cestui que trust was a necessary party to the lien suit, and the failure to join them as a party rendered the impressment of a mechanic's lien null and void. In support of this point Miles Homes relies upon § 429.190 and the following cases: *Redlon v. Badger Lumber Co.*, 194 Mo.App. 650, 189 S.W. 589 (1916); *Langdon v. Kleeman*, 278 Mo. 236, 211 S.W. 877 (1919); *Nelle Plumbing Company v. Stefanic*, 453 S.W.2d 636 (Mo.App.1970). To determine the issue of whether the current beneficiary of a deed of trust is a necessary party in a suit to establish a mechanic's lien, several sections of the mechanic's lien law as contained in Chapter 429 must be examined.

Section 429.010 states that the workman who provides the service or material that goes into land, "by virtue of any contract with the owner", upon complying with the lien law, receives a lien.

Section 429.012 requires that written notice be given by the original contractor to the person with whom the contract is made, this notice advising them about obtaining lien waivers and the potential liability of the owner paying twice for the work. Providing this notice is a condition precedent to the original contractors' receipt of a lien.

In order to establish a mechanic's lien, § 429.080 requires the plaintiff to file a "lien statement" within a prescribed time and name the owners or contractor.

Section 429.150 defines a cestui que trust, "for whose immediate use, enjoyment or benefit" an improvement is made, as an owner within the meaning of the lien laws.

Section 492.190 states in all suits under this law, "the *parties to the contract shall*, and *all other* persons *interested* in the matter in controversy or in the property charged with the lien *may* be made parties, but *such* as are *not made parties* shall *not* be *bound* by any such proceedings." (Emphasis added.)

The appellant Miles Homes relies upon and reads .190 to say its assignee, Miles Finance, should have been made a party, and since it wasn't no lien could have been found. The primary case it cites to support this interpretation, *Nelle Plumbing, supra,* held the "lien statement" required in .080 must name the cestui que trust, as it would benefit from the erection of a building, and as such, under .150 must be considered as an owner; if the deed of trust instrument was of record prior to the lien statement it was a necessary party, and failing to be so named resulted in no entitlement for a mechanic's lien. 453 S.W.2d at 641–42.

Much of the vitality of *Nelle Plumbing* in determining the status of a deed of trust holder vis-a-vis who is an "owner" under § 429.150, was shorn in *R. L. Sweet Lumber Company v. E. L. Lane, Inc.,* 513 S.W.2d 365 (Mo. banc 1974). *Sweet* was concerned with the 10 day notice required of subcontractors to be given owners under § 429.100. Our Supreme Court ruled in Missouri a deed of trust is in the nature of a mortgage and is a lien and no more; it is neither an estate in land nor a right to any beneficial interest. The deed of trust is merely "the right to have the debt, if not otherwise paid satisfied out of the land." *Id.* 368. The "ownership of the deed of trust on the property did not constitute him (appellant) the owner of the title to the property." *Id.* 368. The court bears out the "lien" theory in this state whereby the "grantor continues the owner of the land until entry for breach ..." *Id.* 369. In further holding that a deed of trust does not fit the definition of a cestui the court held the term "immediate use" in the statute was inconsistent with the deed of trust lien theory, and although improvements would enhance the value of the property and the security interest of the lien holders, "that fact does not cause them to be beneficiaries of a trust who as equitable owners ..." would realize, "*no immediate ... benefit conferred.*" *Id.* 369–70 (Emphasis in original). The court's opinion at page 370 provides a detailed itemization of how a mortgagee would be protected in the mechanic's lien area. The court specifical-ly interprets § 429.190 as requiring the owner and other interested parties to be made party to the proceedings, but, the mortgagee, not being made a party to a suit to enforce a mechanic's lien was not affected by the judgment, particularly under the statutory language that those not parties are not bound by such proceedings. *Id.* 370. The court declared *Nelle Plumbing* as it was in conflict with *Sweet,* was not to be followed. *Id.* 371.

■ What makes this portion of the case so difficult to understand is that Miles Homes, as assignor, lost any interest (as limited as it might be under *Sweet*) as second mortgagee when it assigned the note and deed of trust some six months before the plaintiff commenced the foundation work. The portion of the judgment giving priority to the mechanic's lien over this now non-existent interest of Miles Homes was really superfluous to the case. The absence of any provision in the decree as to the status of the lien in relation to the mortgage interest of the assignee Miles Finance was consistent with .190 in that Miles Finance was· not a party and could therefore not be affected. *Advance Concrete & Asphalt Co. v. Ingels,* 556 S.W.2d 955, 959 (Mo.App.1977). Even though *Sweet* dealt with the requirements of a sub-contractor, and here the plaintiff was an original contractor, *J.R. Meade Co. v. Forward Construction Company,* 526 S.W.2d 21, 25–26 (Mo.App.1975), the rationale of *Sweet* controls. Miles Finance was therefore neither an owner nor a contracting party and as such its presence was not mandatory in this suit to confer jurisdiction for the granting of a lien. *Vasquez v. Village Center, Inc.,* 362 S.W.2d 588, 591 (Mo.1962); *Simon Devine Welding Company v. Kuhn,* 329 S.W.2d 249, 252 (Mo. App.1959); *H.C. Jones v. Creason,* 176 S.W.2d 851 (Mo.App.1944).

■ The lien of the plaintiff should not be defeated for failure to name as a party the owner or trustee of the second deed of trust. The lien laws are to be liberally construed in favor of those who

perform work and provide materials. *Sweet, supra,* at 365. The notice requirements to establish a lien do not include a notice to a beneficiary of a deed of trust. *Structo Corp. v. Leverage Inv. Enterprises,* 613 S.W.2d 197, 200 (Mo.App.1981). The language of .190 that interested persons who are nonparties are not bound must be considered in light of § 429.050 which gives a preference to the mechanic's lien over existing encumbrances. *Herbert & Brooner Construction Co. v. Golden,* 499 S.W.2d 541, 545 (Mo.App.1973).

The trial court did not err in establishing a judgment in favor of the plaintiff nor in its decree of a special lien, superior to Miles Homes. The judgment is affirmed.

KAROHL, P.J., and HART, Special Judge, concur.