**GLASCO ELECTRIC COMPANY,**
**Plaintiff/Respondent/Cross–appellant,**

**v.**

**BEST ELECTRIC COMPANY, et al.,**
**Defendants/Appellants/Cross–respondents.**

Nos. 52107, 52138.

Missouri Court of Appeals,
Eastern District,
Division Four.

May 3, 1988.

Garry Seltzer, Murphy and Seltzer, St. Louis, for plaintiff/respondent, cross-appellant.

Weier, Hockensmith & Sherby, Dana Hockensmith, Hillsboro, for defendants/appellants, cross-respondents.

SIMON, Presiding Judge.

Defendants, Westview Health Care Associates (hereafter the "Company"), Lee F. Sutliffe, Westview Center, Inc. (hereafter "Westview"), Midwest Capital Corp., the Industrial Development Authority of Jefferson County (hereafter the "Authority"), and Michael C. O'Flaherty, appeal from a judgment and decree entered by the Circuit Court of Jefferson County, Missouri, encumbering property owned by the Company with a mechanic's lien in the amount of $24,563.65. Plaintiff, Glasco Electric Company (hereafter "Glasco"), cross-appeals from the trial court's refusal to declare that said mechanic's lien be given priority over the deed of trust securing the construction loan.

On April 15, 1983, the Company entered into a construction contract with Essex Contracting Inc. (hereafter "Essex"), for the construction of a nursing home known as the Westview Nursing Center (hereafter the "Westview project"). Essex, as general contractor, subcontracted with Best Electric Company (hereafter "Best"), for the electrical work on the project.

The Company had obtained financing for the Project from the Authority through an offering and sale of $3,975,000 in Nursing Home Revenue Bonds. The loan from the Authority is secured by a document styled "Deed of Trust, Mortgage and Security Agreement." It was executed on April 1, 1983, and recorded in the Office of the Recorder of Deeds for Jefferson County, Missouri, on May 6, 1983. On April 1, 1983, the Authority entered into a separate indenture of trust with Mercantile Trust Company, N.A., (hereafter "Mercantile") in order to secure the payment of the bond issue.

On June 18, 1984, Glasco served written notice of its intention to file a mechanic's lien on the Company and its general partners, Lee F. Sutliffe, Westview, and Midwest Capital Corp., by certified mail. Glasco's verified mechanic's lien statement was recorded in the office of the Circuit Clerk of Jefferson County on June 29, 1984. Glasco's lien statement consists of a mechanic's lien form, together with 78 exhibits made up of photocopies of Glasco's unpaid invoices to Best (hereafter referred to as the invoices). The total amount claimed to be due under the account set forth on the lien is $24,563.65. The lien recites that the first item of said account was furnished on or about January 31, 1984, and the last

date the materials were furnished was May 7, 1984. However, the invoices attached to the lien statement begin January 4, 1984, and the testimony of Dennis Karius, credit manager for Glasco, shows that invoices No. 1 through No. 39 were dated prior to January 31, 1984. Karius testified, however, that Glasco is claiming a lien on the items listed in invoices No. 1 through No. 39, and that the correct dates are the invoice dates.

On August 9, 1984, Glasco filed a twelve count petition seeking to enforce its mechanic's lien for materials supplied, to recover for goods sold to Best, and to recover on a promissory note executed by Larry Best, president of Best Electric Company, and his wife, Ruth Best. Glasco's petition was amended on December 6, 1984, and Count XIII was added seeking to recover for goods sold to Best. Counts II through XI also contained claims against Best for various items sold on different accounts. Count I contained the mechanic's lien claim and Count XII contained the claim on the aforementioned promissory note. By the time of trial, the trial court had entered partial summary judgment on Counts II through XI and on Count XIII, in favor of Glasco and against Best. No appeal has been taken therefrom. On April 9 and 10, 1986, trial was had before the Circuit Court of Jefferson County on Counts I and XII. Judgment was entered in favor of Glasco on both Counts. The instant appeal and cross-appeal concerns only Count I, as Larry and Ruth Best have not appealed the individual judgment against them on Count XII.

The Authority and Michael C. O'Flaherty were joined in the action to impress the mechanic's lien. O'Flaherty served as the trustee under the "Deed of Trust, Mortgage and Security Agreement," given by the Company to the Authority. However, Mercantile Trust Company, N.A., serving as "corporate trustee" under the separate indenture of trust securing the bond issue, was not made a party to the action. In February, 1985, Glasco moved to join Mercantile as a defendant, but said motion was later withdrawn and Mercantile was purportedly dismissed as a party defendant.

Glasco also filed a brief with the trial court in February, 1985, admitting that an encumbrancer not joined, in this case Mercantile, would not be bound by the proceedings.

An issue at trial involved the sufficiency of the description of the materials supplied by Glasco, as set forth in the account contained in the lien by the 78 invoices. Ed Kasten, Glasco's branch manager, was able to identify various trade terms and references that appeared on certain invoices. He explained the meaning of abbreviations used in the electrical industry that appeared on certain invoices, and he testified that he was familiar with most of the descriptions provided on the invoices attached to the mechanic's lien. For example, he testified that the item description "1 TW CONDUIT—EMT," contained in invoice number 17, referred to a one inch thin, three wall conduit made of metal tubing. He testified that the item description "LEV 5821–1 8W IV SQL RCPT," contained in invoice number 40, referred to a duplex ivory receptacle. Kasten testified that most of the item descriptions contained in the invoices are designed for persons in the electrical industry and that the items described in the invoices were of a type that would be used in the Westview project. Kasten testified further that Best had never protested that materials ordered from Glasco were not received.

Robert Mayberry, an employee of Davis Electric Co. which contracted to supply labor to Best on the Westview project, and an electrician for 23 years, testified that there were a good number of items listed on the invoices that he could not identify. Mayberry testified, however, that as foreman for Davis Electric, he had no doubts that all of the materials furnished by Glasco were actually installed in the Westview project.

Dennis Karius, credit manager for Glasco, specifically reviewed eleven of the invoices attached to the mechanic's lien and testified that eight were either partially or completely illegible.

Robert Church, the electrical estimator responsible for bidding on jobs for Best, testified that Glasco was its majority supplier of electrical materials for the project. Church testified that his responsibilities on the project included ordering major items for the job, as well as making on-site inspections. Church testified that there was never a time when material ordered from Glasco was not received and that there was never an occasion when material ordered from Glasco, designated for use in the project, was used in a project other than Westview. Church testified that it was his responsibility to insure that the materials ordered from Glasco were used at the Westview project and that to the best of his knowledge, all of the materials described in the invoices were actually installed in the Westview project. Church also testified that the prices he had been quoted by Glasco seemed fair and reasonable.

Testimony showed that Best and Glasco had been doing business since approximately 1968, and that Best had several running accounts with Glasco, including an account on a personal obligation, in the form of a promissory note signed by Larry Best and his wife, Ruth Best.

The materials supplied to Best by Glasco for use in the Westview project were paid for by Best until December, 1983, or January, 1984. JoAnn Gill, a "cash applicator" at Glasco responsible for crediting payments received to open accounts, identified defendants' Exhibits A, B and C at trial. Defendants' Exhibit A is a check dated 12/28/83 from Best to Glasco in the amount of $28,069.29. According to Ms. Gill, no remittance instructions, regarding application of the payment, were received with the check, so it was applied in proportion to all Best accounts, including Westview, bringing all accounts current to November, 1983. Ms. Gill testified that when payment was received without written directions as to application on multiple accounts, company policy was to call the debtor for instructions. She also testified that if instructions were not forthcoming, the payment would be applied to the oldest invoices outstanding.

Defendants' Exhibit B is a check dated 2/9/84 from Best to Glasco in the amount of $20,204.09. Ms. Gill testified that there was application advice attached to this check indicating that five accounts other than Westview were to be credited. Ms. Gill testified that this check was applied to accounts other than Westview. Defendants' Exhibit C is a check dated 2/24/84 from Best to Glasco in the amount of $9,298.60. Ms. Gill testified that no application advice was received with this check. The payment was credited to various accounts, including Westview, paying invoices from December 1, 1983 through December 29, 1983.

Larry Best testified that he had received full payment from Essex for all the material purchased from Glasco and used in the Westview project. Larry Best testified that with respect to defendants' Exhibit A (a $28,069.29 check) he spoke with Dennis Karius about the application of the payment and instructed Karius to apply the payment to the promissory note signed by Larry Best and his wife, Ruth Best. He testified that the Westview account was delinquent at this time, but that Westview was not discussed during this conversation. Counsel for defendant asked Best if Glasco knew that he was applying proceeds intended for payment on the Westview account on his personal account. Glasco's counsel objected on the ground that there had been no foundation laid as to what Glasco knew. The objection was sustained and the subject was not broached again. Dennis Karius testified that he did not recall having a conversation with Larry Best regarding payment application with respect to defendants' Exhibit A.

Our standard of review of this court tried case is governed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). We can reverse only if possessed with the firm belief that the judgment is wrong and there is no substantial evidence to support it, or it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* at 32.

In their first point, defendants maintain that the trial court erred in declaring and

applying the law because Glasco failed to provide a just and true account with their mechanic's lien statement. Defendants argue that the account does not comply with the law in disclosing the character of the items composing it. Defendants' argument is premised upon Glasco's use of codes and numerical descriptions in identifying items supplied, and the partial or total illegibility of certain invoices attached to the lien statement.

■ Section 429.080, RSMo (1986), requires a lien claimant to file "a just and true account of the demand due" as a condition precedent to his or her right to fix a mechanic's lien upon property. *Zundel v. The Edge, Inc.,* 705 S.W.2d 113, 114 (Mo. App.1986). Section 429.080, RSMo (1986) "should be construed as favorably to mechanics and materialmen as its terms will permit." *Mid–west Engineering & Construction Co. v. Campagna,* 421 S.W.2d 229, 233[2] (Mo.1967). Likewise, the courts should pursue a liberal course in interpreting the sufficiency of such accounts. *Wilson–Reheis–Rolfes Lumber Co. v. Ware,* 158 Mo.App. 179, 138 S.W. 690, 692[1] (1911). The account which the statute contemplates is such a statement of the claim as fairly appraises the owner and the public of the nature and the amount of the demand asserted in the lien. In determining the sufficiency of the lien account, it must be considered as a whole. *Oliver L. Taetz, Inc. v. Groff,* 253 S.W.2d 824, 830[8] (Mo.1953). There is no precise definition of a just and true account. Each case must be judged according to its particular facts. *Allied Pools, Inc. v. Sowash,* 735 S.W.2d 421, 426[8] (Mo.App.1987).

We have carefully reviewed each of the 78 invoices attached to Glasco's mechanic's lien. There are approximately 306 separate items contained in the 78 invoices making up the account. The only testimony concerning the illegibility of the invoices was elicited from Dennis Karius by defendants' counsel on cross-examination. Karius found invoice nos. 26, 41, 58, 69, 70, 72, 73 and 74 to be either partially or totally illegible. Karius testified that as to invoice nos. 41, 73 and 74, he could read neither the amounts charged for individual items nor the total invoice amount due. The trial court found that "several" of "Glasco's invoices were illegible," but nevertheless found the lien statement to be a just and true account under our holding in *S & R Builders & Suppliers, Inc. v. Marler,* 610 S.W.2d 690 (Mo.App.1980).

In *S & R Builders,* the appellants claimed that the trial court had erred in finding a lien in favor of S & R Builders because their lien statement was not a just and true account in that it contained, among other things, illegible items claimed under the demand. In finding no error we stated:

> It is true, as appellants claim, that the writing on the invoices is difficult to read and that a few of the amounts for the individual items are illegible, but the great majority of the items are readily identifiable and the totals of all the invoices can be read very easily.

*Id.* at 697. *See Scott v. Strickland,* 10 Kan.App.2d 14, 691 P.2d 45 (Kan.App.1984) (lien statement adequate although very poor photocopies of invoices, difficult to read, used as itemized account).

■ Here, defendants seek to distinguish *S & R Builders* on the ground that not only are individual prices illegible, but the totals and item descriptions are also illegible. We agree. At a minimum the account must advise the owner or the public of the total amount due and the nature of the materials furnished. If neither the individual prices nor the totals are legible, or the items supplied are illegible, the account is insufficient. If it were otherwise, the purpose of the just and true account requirement would be frustrated. Neither the owner nor interested third parties, nor the public, could discern the nature and the amount of the demand. This does not mean, however, that Glasco's entire lien must be vitiated.

It is generally recognized that a lien statement may be regarded as "just and true", so as not to vitiate the entire lien, even if it contains mistakes or errors of omission, and includes nonlienable items of charge, *if those inaccuracies of fact*

*are unintentional and are the result of honest inadvertence, accident, or oversight, and do not result from deliberate intention or design.* As the court said in *Woodling v. Westport Hotel Operating Co.,* 227 Mo.App. 1231, 63 S.W.2d 207, "If it is shown that the filing of an inaccurate lien was the result of inadvertence and mistake, there being no intention or desire to defraud, the lien will be upheld." Also see *Miners Lumber Co. v. Miller et al.,* Mo.App., 117 S.W.2d 711; and *Hydraulic Press Brick Co. v. McTaggart,* 76 Mo.App. 347.

*Putnam v. Heathman,* 367 S.W.2d 823, 828–29[7] (Mo.App.1963) (emphasis in original). Defendants do not contend, and the record is void of any evidence, that the illegible invoices contained in the account were made so intentionally.

However, the trial court erred by including in the judgment, the invoices that were illegible, both as to individual item prices and totals, and as to the description of items supplied. Although we have carefully examined the 78 invoices in question, we are not prepared to declare which ones should have been disallowed. The legibility or illegibility of the invoices is a factual question for the trier. *See Hill v. Stealy,* 153 S.W.2d 813, 815[1–3] (Mo.App.1941). The uncontradicted testimony of Dennis Karius, plaintiff's own witness, however, established that at least three invoices were deficient, specifically invoice nos. 41, 73 and 74. It is apparent from a perusal of the invoices that others are also deficient. Accordingly, the judgment is reversed and the cause remanded for reconsideration in accordance with this opinion.

■ Defendants also argue that the account provided by Glasco in its mechanic's lien statement is not a just and true account because Glasco "has provided no more than the bare item numbers" in its lien statement to identify the materials supplied. *Citing Bernard v. Merrick,* 549 S.W.2d 561 (Mo.App.1977), defendants argue that such a bare recital of items numbers is insufficient to constitute a just and true account as required by the lien law because it provides no information so that

interested persons may learn from the lien statement what the lien claimant asserts he has furnished. Defendants' reading of *Bernard* is correct. However, the lien descriptions found in the account set forth in the *Bernard* case, *see id.* at 562, is vastly different from the instant case. It is true that some of the items supplied in the instant case are described in codes and abbreviations. Ed Kasten testified that the abbreviations and codes were used in the electrical industry and that most of the item descriptions contained in the invoices are designed for persons in the electrical industry. The trial court found that "several items were described in trade terms" and held the account to be sufficient based on our ruling in *North Electric Company v. Satallite Communications,* 588 S.W.2d 261 (Mo.App.1979).

In *North Electric Company,* we held that "a description in a lien statement of the items furnished in trade terms and abbreviations is in compliance with the statutory requirement of a 'just and true account.'" *Id.* at 263. This rule is of ancient vintage and has been consistently followed. *See, e.g., Schulenburg v. Werner,* 6 Mo.App. 292 (1878); *Henery v. Plitt,* 84 Mo. 237 (1884); *Kneisley Lumber Co. v. Edward B. Stoddard Co.,* 113 Mo.App. 306, 88 S.W. 774 (1905); *Wilson–Reheis–Rolfes Lumber Co. v. Capron,* 145 Mo. App. 497, 122 S.W. 1085 (1909); *Wilson–Reheis–Rolfes Lumber Co. v. Ware,* 158 Mo.App. 179, 138 S.W. 690 (1911); *Landreth Machinery Co. v. Roney,* 185 Mo. App. 474, 171 S.W. 681 (1914). In the cases cited, the accounts were no more full and definite in describing the different lots of material than is the present account, and yet, they were held to be sufficient. We therefore conclude that this account sufficiently describes the kinds of materials furnished and meets the requirements of the lien law.

In their second point, defendants claim that the trial court erred in declaring and applying the law in that Glasco's lien should have been denied because Glasco intentionally and knowingly failed to apply proceeds paid to it by defendant Best Elec-

tric to the account upon which its mechanic's lien was filed.

■ Generally, the law is that when a debtor owes on various accounts and makes partial payment against the total, the debtor has the first right to dictate which account or accounts shall be the ones towards which the payment shall be applied. *Herrman v. Daffin*, 302 S.W.2d 313, 315[1] (Mo.App.1957). However, absent such direction from the debtor, the creditor may apply a partial payment in any manner he or she believes necessary and appropriate to protect his or her interests. *Anchor Lumber Co. v. United Exteriors Inc.*, 604 S.W.2d 754, 757[3] (Mo.App.1980). These rules are subject to the following qualification: If the creditor knows or is chargeable with knowledge that a third party is the source of such payment, then it becomes the duty of the creditor to make the application in such a manner so as to give credit to and protect the rights of the third party supplying the funds. *General Plywood Corp. v. S.R. Brunn Construction Co.*, 511 S.W.2d 905, 908–09[3, 4] (Mo.App.1974).

■ The trial court made no specific finding with respect to the application of payments and Glasco's knowledge, or lack thereof, of the source. However, Rule 73.-01(a)(2) provides in pertinent part that "[a]ll fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached." Here, the trial court imposed a mechanic's lien in favor of Glasco on the property owned by the Company. It could not have done so if it had found that Glasco had knowledge that Essex was supplying proceeds for payment on the Westview account, and Glasco applied such proceeds to another account. *Reger Roofing & Siding Co. v. R & H Roofing and Supply Co.*, 582 S.W.2d 716, 719[2] (Mo.App. 1979).

Having carefully reviewed the record, we conclude that the trial court did not err in this regard. Nothing in the record shows that Glasco had knowledge or is chargeable with knowledge that Essex was the third party source of the specific payments by Best to Glasco. Defendant's Exhibits A, B

and C all show the payor as "Best Electric Co. Inc." The checks are signed by Ruth Best. Nowhere on the Exhibits is Essex or any other third party shown as the supplier of proceeds. It is true that Larry Best testified that he advised Dennis Karius to apply the proceeds from the check evinced by Exhibit A to a personal account. However, Dennis Karius testified he had no recollection of such instructions and nothing shows that the proceeds were being supplied by Essex or any other third party. When there is a dispute in the evidence as to the existence of a fact it is, of course, for the consideration of the trier of fact. *Jones v. Phillips Petroleum Co.*, 186 S.W.2d 868, 875[15] (Mo.App.1945). Moreover, JoAnn Gill testified that the payment received, as evinced by Exhibit A, was applied to all Best accounts, including Westview, bringing all accounts current. As to Exhibit B, payment was applied as per the remittance advice and Exhibit C was applied according to Glasco's company policy. Nothing shows they should have been applied otherwise. Point denied.

In its only point on cross-appeal, Glasco maintains that the trial court erred in failing to give its mechanic's lien priority over the deed of trust securing the construction loan on the Project. The trial court found that Glasco cannot obtain priority over the deed of trust due to its failure to join Mercantile Trust Company, the "corporate trustee" under the separate indenture of trust securing the payment of the bond issue of the Authority. The trial court found that Mercantile was a necessary party. Glasco maintains that Mercantile is not a necessary party to the action and, therefore, its lien should have been given priority over the construction loan.

In Section 1 of the "Deed of Trust, Mortgage and Security Agreement" between the Authority and the Company, Mercantile Trust Company, N.A., is designated as "the corporate trustee." The mortgage trustee is Michael G. O'Flaherty and his successors or assigns. In the granting clause, the Company conveyed to the mortgage trustee, Michael G. O'Flaherty, for the benefit of the Authority:

1. All right, title and interest of the company in and to the land as further described in Schedule 1 hereto and that portion of the Project described in Schedule 2 hereto, which consists of real property, with the tenements, hereditaments, appurtenances, rights, privileges, easements, franchises, rights, appendages and immunities thereunder belonging or appertaining.

2. All property including, without limitation, all fixtures, furnishings, machinery and equipment and related support equipment of any nature whatsoever now or hereafter constituting a part of the project including, but not limited to, the property described in Schedule 2 hereto to be acquired in whole or in part of the proceeds of the Series 1983 Bonds.

3. All after-acquired property, products, proceeds, replacements, substitutions or additions of any kind whatsoever.

In Section 23, the mortgage trustee, Michael G. O'Flaherty, was granted a power of sale of the real property for various defined circumstances of default.

Section 27 of the deed of trust provides: Under the Indenture [of trust between the Authority and Mercantile], the Authority will, as additional security for the bonds, assign, transfer, pledge and grant a security interest in its rights under the Note, under the Mortgage and under the Agreement to the Corporate Trustee. The Corporate Trustee is hereby given the right to enforce, either jointly with the Authority or separately, the performance of the obligation of the Company under the Note, under the Mortgage and under the Agreement, and the Company hereby consents to the same and agrees that the Corporate Trustee may enforce such rights as provided in the Indenture and the Agreement and the Company will make payments required by the Agreement and by the Note directly to the Corporate Trustee. This Mortgage recognizes that the Corporate Trustee is a third party creditor-beneficiary hereof.

Section 429.190 provides that:

In all suits under sections 429.010 to 429.340 the parties to the contract shall, and *all other persons interested* in the matter in controversy or *in the property charged with the lien may be made parties, but such as are not made parties shall not be bound by any such proceedings.* [emphasis added]

Defendants argue that the trial court did not err in denying Glasco priority over the construction loan because Mercantile, as corporate trustee for the bondholders, had to be joined in order to obtain such priority.

The issue concerning priority is governed by two statutory provisions, Sections 429.050 and 429.060, RSMo (1986). Section 429.050 provides "that a mechanic's lien shall attach to the *improvements* constructed in preference to any prior lien. Section 429.060 provides that the mechanic's lien shall be preferred to all other encumbrances on the improvements or on the *ground* but only if subsequent to the commencement of the improvements." *Kranz v. Centropolis Crusher, Inc.*, 630 S.W.2d 140, 147[2] (Mo.App.1982) (emphasis in original).

Here, Glasco's petition contained no allegation as to the time of commencement of work on the Project. By its mechanic's lien, filed June 24, 1984, Glasco simply claimed that it is entitled to priority over the deed of trust, but did not allege when the work on the project commenced. The trial court found that "work was contracted to begin on the project in April, 1983," but there is no specific finding as to the actual date construction began. We have examined the record and have been unable to locate evidence of the time of commencement of work on the project. However, it is clear and the trial court found that the deed of trust "was executed on April 1, 1983 and recorded in the office of the Recorder of Deeds for Jefferson County on May 6, 1983."

It is clear that § 429.050 applies in the instant case. It was incumbent upon Glasco to plead and prove all requisite facts which would have entitled it to priority under § 429.060. *See Structo Corporation v. Leverage Investment Enterprises, Limited,* 613 S.W.2d 197, 201[8] (Mo.App. 1981). This Glasco failed to do. There is a

want of evidence that the deed of trust was filed subsequent to the commencement of the improvements.

■ We note that § 429.050 is to be considered when applying the language of § 429.190, which provides that interested persons who are nonparties are not bound. *Leonard v. Bennett,* 674 S.W.2d 123, 131[11] (Mo.App.1984). In *Leonard,* we held that an assignee of a deed of trust who was not joined as a party in a suit to enforce a mechanic's lien on property securing the deed of trust, could not be affected by the judgment. However, the failure to join the assignee did not preclude the trial court from decreeing a lien in favor of the lien claimant, superior to that of the assignor.

In *Structo Corporation, supra,* the court interpreted § 429.190 thus:

> The parties to the contract in contention are necessary to a proceeding to adjudicate a lien. Other persons in interest in the property charged are nominally permissive, but equally necessary for efficacy of judgment. This is because, as the statute states plainly: *such as are not made parties shall not be bound by any such proceedings.* This procedure contemplates that the holder of a prior mortgage has an interest to contest the extraordinary preference § 429.050 accords an adjudicated lien of mechanic or materialman over precedent encumbrances, so that an adjudgment of lien will not bind the prior mortgagee not joined in the proceeding. *Hicks v. Scofield,* 121 Mo. 381, 25 S.W. 755, 756 (1894).

*Structo Corporation,* 613 S.W.2d at 200[4]. (emphasis in original).

Therefore, we conclude that Mercantile was not an indispensable party to the maintenance of this action, but is a necessary party in order to be bound by the effect of a judgment in favor of Glasco. Thus, Glasco's lien could not affect the interests assigned by the Authority to Mercantile, or the interest of the bondholders under the indenture of trust. However, Glasco's lien as set forth in the judgment should be given priority as to the interests of the Authority and the mortgage trustee, Mi-

chael O'Flaherty. Both were parties to the action and pursuant to § 429.050 Glasco should be given priority over the interests of the Authority and Michael O'Flaherty, as to the improvements only.

The judgment is reversed and remanded with instructions to proceed in accordance with this opinion.

CRANDALL and GRIMM, JJ., concur.