David C. Hemingway, Asst. Public Defender, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Joanne E. Beal, Asst. Atty. Gen., Jefferson City, for respondent.

KINGSTON ELECTRIC, INC.,
Plaintiff/Respondent,

v.

WAL–MART PROPERTIES, INC.,
Defendant/Respondent/Appellant,

v.

MAX BARKEN CONSTRUCTION COMPANY, INC., and L.M.B. Construction Company, Inc., Defendants/Appellants,

v.

PPG INDUSTRIES, INC.,
Defendant/Cross-claimant/Respondent.

Nos. 67068, 67100.

Missouri Court of Appeals,
Eastern District,
Division Four.

May 16, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 26, 1995.

Application to Transfer Denied
July 25, 1995.

Kim Roger Luther and Katherine L. Butler, St. Louis, for Kingston Elec., Inc.

Stefan J. Glynias and Lisa A. Green, St. Louis, for Wal–Mart Properties, Inc.

Francis Slay, Guilfoil, Petzall, Shoemake, St. Louis, for PPG Industries, Inc.

W. Dudley McCarter, Behr, Mantovan, McCarter & Potter, St. Louis, for Max Barken Const. Co., Inc.

GRIMM, Chief Judge.

On November 12, 1987, Max Barken Construction Company, Inc.,[1] entered into a contract with Wal–Mart Properties, Inc. Under the agreement, Barken was the general contractor for the construction of a Wal–Mart Store in St. Louis County.

On that same day, Barken entered into several subcontracts. This appeal concerns two. One was with Kingston Electric, Inc.; it required Kingston to furnish labor, materials, and equipment to complete certain electrical work. A dispute arose as to whether Kingston was obligated to complete the parking lot lighting system. The trial court held that Kingston was not and granted Kingston a mechanic's lien for other sums due. We affirm that judgment.

Barken's other subcontract was with Economy Door and Glass Company. Economy was to provide and install certain window glass and frames. Economy, in turn, contracted with PPG Industries, Inc. to have PPG supply the glass and frames. PPG furnished the materials, Economy performed its contract, and Barken paid Economy. However, Economy failed to pay PPG. The trial court granted PPG a mechanic's lien. We reverse that judgment.

## I. Kingston's Mechanic's Lien

### A. Sufficiency of Notice

In their first point, Barken and Wal–Mart allege the trial court erred in granting a mechanic's lien for Kingston because "Kingston failed to prove proper service of notice of its mechanic's lien claim on Wal–Mart, as required under section 429.100."[2]

Section 429.100 requires that persons other than the original contractor must give the owner ten days notice before filing a mechanic's lien. The notice must set forth the amount and from whom it is due. The statute states that "[s]uch notice may be served by any officer authorized by law to serve process in civil actions, or by any person who would be a competent witness." *Id.*

When the notice is served by an officer, his official, endorsed return is sufficient proof. When it is served by another person, "the fact of such service shall be verified by affidavit of the person so serving." *Id.*

Under a strict construction of the statute, the fact of service here would be insufficient. However, the mechanic's lien law is highly remedial. In order to "advance its equitable object, a liberal construction should be given to all of its provisions." *The Fruin–Bambrick Constr. Co. v. Jones,* 60 Mo.App. 1 (Mo.App.St.L.1894); *Sentinel Woodtreating, Inc. v. Cascade Dev. Corp.,* 599 S.W.2d 268, 270 (Mo.App.S.D.1980).

---

1. The pleadings reflect that "Max Barken Construction Company was purchased by and/or merged into Defendant L.M.B. Construction Co., Inc." For ease of reading, we refer to these two defendants in the singular as "Barken."

2. All statutory references are to RSMo 1994.

■ As a result, our courts have held that the manner of service is immaterial where it clearly appears that the owner actually received adequate written notice not less than ten days prior to the filing of the lien claim. *Id.; Fruin–Bambrick*, 60 Mo.App. at 4. If the manner of service is immaterial when timely actual notice is received, it follows that the same rule should apply concerning the proof of service.

■ In the case before us, Kingston did not prove service by either an official return or affidavit. Rather, Kingston submitted records from Wal–Mart's registered agent, C T Corporation System.

C T's records reflect that on November 22, 1988, a "Notice by Contractor to Owner of Building of claim of Mechanic's Lien" was served on C T. Also, on November 22, C T sent a "Service of Process Transmittal Form" to Wal–Mart. This form also contains the notation: "This confirms our telephone call to your office." C T's records contain a carbon copy of the Service of Process Transmittal Form. The signed carbon copy shows that the original was received on November 23, 1988. C T's records were authenticated by its supervisor of service of process.

Here, the purpose of the notice, to give an owner time to investigate the merits before deciding whether to pay or contest the claim, was met. *See Miller v. Hoffman*, 26 Mo. App. 199, 202 (Mo.App.St.L.1887). Thus, although Kingston did not prove timely notice by one of the statutory methods, the proof given was sufficient to show that Wal–Mart received actual notice of Kingston's intent to file a mechanic's lien. Point denied.

### B. Subcontract Provisions

In their second point, Barken and Wal–Mart allege the trial court erred in finding in favor of Kingston for $19,840.00, the cost of the parking lot lighting system. They argue that they properly set off this amount from what Kingston was paid because Kingston's subcontract required it to do this work. They contend that when Kingston refused to do the work, they had to pay that sum to another contractor.

■ The opening section of the printed American Institute of Architects Subcontract form used by the parties incorporates by reference the agreement between the owner and contractor, the drawings, and the specifications. The second section of the printed form says that "The Subcontractor shall perform all the Work required by the Contract Documents for...." Among the listed, typed items is section "16530—Site Lighting."

Section 16530, as set forth in the project manual, consists of certain specifications for a parking lot lighting plan. "It is well settled that matters incorporated into a contract by reference are as much a part of the contract as if set out in haec verba." *Trantham v. Old Republic Ins. Co.*, 797 S.W.2d 771, 774 (Mo.App.E.D.1990). These sections would require Kingston to complete the parking lot lighting system.

However, another section of the form subcontract, which appears to conflict with the second section, must be considered. The last provision in the last section of the subcontract says: "... the documents which are applicable to this Subcontract, except for Addenda and Modifications issued after execution of this Subcontract, are enumerated as follows:." A typed list of certain drawings, specifications, and addenda follows.

The pertinent drawing containing the plans for the parking lot system is Sheet Number E–1 dated October 8, 1987. Sheet Number E–1 dated October 8, 1987 is not included in the typed list.

Here, the subcontract contains contradictory provisions and is ambiguous on its face. The second section appears to include the parking lot lighting, while the last section does not.

■ A contract is ambiguous when its terms are susceptible of more than one meaning so that reasonable persons may fairly and honestly differ in their construction of the terms. *J.S. DeWeese Co. v. Hughes–Treitler Mfg. Corp.*, 881 S.W.2d 638, 644 (Mo. App.E.D.1994). When a contract is ambiguous, extrinsic evidence may be used to resolve the ambiguity. *Id.*

At trial, Kingston presented evidence that it did not see or receive Sheet Number E–1 dated October 8, 1987 until after the subcontract was signed and work begun. Without that sheet, witnesses said it would be impossible to bid the lighting system.

Further, after the work began, Barken asked Kingston to bid the parking lot lighting. Kingston then was furnished Sheet Number E–1 dated October 8, 1987.

The trial court found that the subcontract between Kingston and Barken did not "obligate [Kingston] to perform the electrical work for the parking lot lighting." When there is conflicting evidence, we defer to the trial court. The trial court's finding is supported by substantial evidence. *See Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo.banc 1976). Point denied.

### C. Judgment against Wal–Mart

In point three, Barken and Wal–Mart allege that the "trial court erred in awarding judgment in favor of Kingston Electric and against Wal–Mart Properties on Kingston's Mechanic's lien, in the sum of $68,413.19, plus interest, in that there was no privity of contract between Kingston Electric and Wal–Mart and Wal–Mart had no contractual or other liability to Kingston Electric."

Although the wording of the trial court's judgment is not a model, we do not construe paragraph A of the judgment as a personal judgment against Wal–Mart. Rather, we construe it to be only a judgment against the building, appurtenances and improvements of the property described in paragraphs 7, 11, and 18 of the conclusions of law. Point denied.

### II. PPG's Mechanics' Lien

We now turn to points relating to PPG Industries. In their fourth point, Barken and Wal–Mart allege the trial court erred in granting PPG's mechanic's lien because the lien failed "to adequately describe and identify the materials furnished by it, or to properly itemize the charges set forth therein in sufficient detail to constitute a 'just and true account' as required under § 429.080." They contend that PPG's mechanic's lien did not list the incorporated materials with sufficient specificity. We agree.

PPG filed a mechanic's lien which incorporated three attached invoices by reference. One invoice was apparently generated by a computer, while the other two contain handwritten entries. Among other things, each invoice contains columns for the quantity of an item, product identification/description, a unit price, and a total price. The first entry on the computer generated invoice reads:

| QTY | PRODUCT IDENTIFICATION/ DESCRIPTION | UNIT PRICE | TOTALS |
|---|---|---|---|
| 3 | 174206224 | 27.29 | 81.87 |

Evidence at trial indicated that the numbers under product identification were a "part number unique to that particular shape."

The question of adequacy of the statement turns upon "whether the statement provides detail and itemization sufficient to enable the owner to investigate and determine the propriety of the lien claim." *Commercial Openings, Inc. v. Mathews,* 819 S.W.2d 347, 350 (Mo. banc 1991). PPG contends that this "case is comparable" to *Glasco Elec. Co. v. Best Elec. Co.,* 751 S.W.2d 104 (Mo.App.E.D. 1988). We disagree.

In *Glasco,* unlike here, the items were identified by description, albeit in an abbreviated form. *Id.* at 106. We held that testimony supported a holding that the abbreviations and codes were used in the electrical industry and understood by persons in that industry. *Id.* at 109. Therefore, we concluded that the "account sufficiently describes the kinds of materials furnished and meets the requirements of the lien law." *Id.*

The facts before us are more akin to those in *Bernard v. Merrick,* 549 S.W.2d 561 (Mo. App.W.D.1977). There, the contractor listed invoice numbers under the "Item" column. *Id.* at 562. The invoices were not attached to the statement. However, at trial, contractor testified that he gave owner a copy of each invoice as the materials were delivered. Each invoice contained a complete list of the items and materials furnished. *Id.* at 563. Our western district colleagues held that the lien statement did not inform anyone of what the contractor had furnished. *Id.*

A subcontractor's statement must advise the owner or the public of the total amount due and the *nature of the materials*

*furnished. Glasco,* 751 S.W.2d at 108 (emphasis added). Here, PPG's statement did not adequately describe the items provided, and therefore failed to advise Wal–Mart of the nature of the materials furnished. Accordingly, we find that PPG's lien statement did not provide a "just and true" account of the materials. Point granted.

Our disposition of this point also disposes of the next two points. Paragraph B of the trial court's judgment, awarding PPG a mechanic's lien on the property, is reversed. In view of that reversal, the judgment against Barken contained in paragraphs D and F of the trial court's judgment is also reversed.

### III.  Wal–Mart's Cross–Claim for Indemnity

■■■ In all previous issues, Barken and Wal–Mart took the same position and joined in the points. However, on this final point, Barken alleges the trial court erred in awarding Wal–Mart a judgment on Wal–Mart's cross-claim against Barken for the amount of Kingston's[3] judgment.

Barken argues that Wal–Mart "was not entitled to such judgment against Barken unless and until it proved payment of that amount to Kingston." In other words, Barken contends that Wal–Mart should wait to bring a cross-claim until it is actually forced to pay a subcontractor. We disagree.

Two provisions of the mechanic's lien law are pertinent. Section 429.140 provides that if the owner has settled with the contractor in full, he "shall be entitled to recover back from the contractor any amount *so paid* by the owner for which the contractor was originally partly liable." (emphasis added). It is arguable that this statute does not entitle Wal–Mart to a judgment against Barken until Wal–Mart has paid Kingston.

However, that does not dispose of the issue. Section 429.180 states that the pleadings and practice in mechanic's lien cases shall "be the same as in ordinary civil actions and proceedings in circuit courts, except as herein otherwise provided." Rule 55.32 permits a party to state a cross-claim against another party. "Such cross-claim may in-

clude a claim that the party against whom it is asserted is or *may be liable to the cross-claimant* for all or part of a claim asserted in the action against the cross-claimant." *Id.* (emphasis added).

Here, Wal–Mart's contract with Barken provided that Barken "shall indemnify and hold harmless [Wal–Mart] ... from and against all claims ... arising out of or resulting from the performance of the Work." Wal–Mart's cross-claim pled that Barken was under a duty to defend and indemnify Wal–Mart. This cross-claim falls within the permissible scope of Rule 55.32.

In examining paragraph C of the trial court's judgment, we perceive why Barken fears that an outright judgment in favor of Wal–Mart and against it has been entered, rather than one only for indemnification. Pursuant to Rule 84.14 which directs us to finally dispose of the case and give such judgment as the trial court ought to give, we amend paragraph C of the trial court's judgment to read as follows:

C.  Defendant Wal–Mart Properties, Inc. is entitled to indemnification from Defendant Max Barken Construction Company on its cross-claim. Defendant Wal–Mart is granted judgment against Defendant Max Barken Construction Company for all amounts which Defendant Wal–Mart is required to pay Plaintiff Kingston Electric Company to discharge its mechanic's lien.

### IV.  Conclusion

The trial court's judgment in favor of Kingston and against Barken, as well as the mechanic's lien against the property, is affirmed. We reverse paragraph B of the trial court's judgment awarding PPG a mechanic's lien. We amend the trial court's judgment on Wal–Mart's cross-claim and affirm as amended. Costs assessed to Barken.

AHRENS, P.J., and DOWD, J., concur.

---

**3.**  The point also claimed error in awarding Wal–Mart judgment for the PPG judgment. In view of our holding concerning the PPG judgment, we consider Barken's point as limited to the Kingston judgment.